No. 25-1313

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**PACITO, et al.**,

        Plaintiffs-Appellees,

v.

**DONALD J. TRUMP, et al.**,

        Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Washington
District Court Case No. 2:25-cv-255

**REPLY IN SUPPORT OF
EMERGENCY MOTION PURSUANT TO CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL
RELIEF REQUESTED BY MARCH 21, 2025**

YAAKOV M. ROTH
   *Acting Assistant Attorney General*
DREW C. ENSIGN
   *Deputy Assistant Attorney General*
AUGUST E. FLENTJE
   *Acting Director*
NANCY K. CANTER
   *Senior Litigation Counsel*
   U.S. Department of Justice
   Civil Division
   Office of Immigration Litigation
   Washington, DC 20005
JOSEPH MCCARTER
ALEXANDRA YEATTS
   *Trial Attorneys*

## INTRODUCTION

The district court's universal injunction is wholly untenable. Plaintiffs do not attempt to defend entire portions of it. Plaintiffs do not, for example, offer any defense of the injunction against §3(c) of the USRAP Order, which allowed for case-by-case *grants* of refugee status. Nor have they offered any explanation of how such a provision could cause them harm. Similarly, Plaintiffs do not even *attempt* to argue that the injunction against §4 comports with Article II's Opinions Clause—a constitutional provision they ignore entirely. In Plaintiffs' minds, alleged statutory violations somehow permit federal courts to strip the President of power explicitly given to him by the Constitution. The district court's silent acceptance of that extraordinary position is but one of the many grievous legal errors committed below.

As to the issues Plaintiffs do address, Plaintiffs' arguments fare little better. The district court's injunction on the refugee suspension directly violates *Trump v. Hawaii*, 585 U.S. 667 (2018) and the text of pertinent immigration statutes. Under *Hawaii*, the President has unequivocally satisfied all requirements for invoking §1182(f). Nevertheless, Plaintiffs and the district court reasoned that the USRAP Order conflicted with the "purpose and policy"—read *not text*—of the Refugee Act. Add. 357-58. Both tellingly ignore the Supreme Court's holding that §1182(f) permits the President to "impose entry restrictions *in addition to* those elsewhere enumerated in the INA," *Hawaii*, 585 U.S. at 684 (emphasis added)—never citing

1

or addressing that explicit "in addition" holding even once. In any event, 8 U.S.C. §1157(a)(2) permits the President to set the annual limit of refugees at zero, thus rendering the district court's concern that §1182(f) could be used indirectly to "eviscerate[] an entire statutory scheme" nonsensical. Add. 357. There is no circumvention: §1182(f) and §1157 give the President the authority to pause refugee admissions both directly and indirectly. Congress's allocation to the President of *two* independent authorities to suspend refugee admissions do not, as the district court held, amount to one prohibition.

These errors have inflicted extraordinary harms upon Defendants, particularly as the injunction usurps the President's authority over immigration and foreign affairs. Moreover, Plaintiffs do not deny that refugee status granted under the preliminary injunction will be difficult or impossible to reverse—thus inflicting quintessential irreparable harm.

Finally, the universal scope of the district court's injunction was an abuse of discretion. The district court provided scant analysis to support universal relief aside from citing *dissenting* opinions and the principle that universal relief is warranted in all immigration cases, a theory this Court has expressly rejected.

# ARGUMENT

**I.	Plaintiffs Continue to Misread the Plain Text of 8 U.S.C. §1182(f) and *Hawaii***

Plaintiffs' merits arguments (at 9-12) ultimately depend upon their position that the President is without authority to issue the USRAP Order. Those arguments flout *Hawaii* and the statutory provisions at issue here.

A.	Plaintiffs assert (at 9-10) that the USRAP Order is unlawful because it references "record levels of migration" in general rather than "record levels of refugees" in particular and is thus somehow "irrelevant" and "insufficient." That sort of second-guessing and flyspecking of the President's proclamation is out of bounds under *Hawaii*, which held that §1182(f) provides a "comprehensive delegation" of authority that "exudes deference to the President in every clause." *Hawaii*, 585 U.S. at 685. Section 1182(f) gives Plaintiffs no license to second-guess the President's contrary policy determinations. *See Hawaii*, 585 U.S. at 684-85 ("sole prerequisite" to the President's exercise of authority is determination that entry of the covered aliens into the United States "would be detrimental to the interests of the United States"). Anyway, the Order expressly refers to "record levels of migration, *including through the ... USRAP*," so Plaintiffs' argument lacks merit on its own terms.

B.	Plaintiffs' attempt to impose a temporal requirement on the USRAP Order is similarly unavailing. As Plaintiffs concede (at 10), *Hawaii* made clear that

3

the President need not "prescribe in advance a fixed end date for ... entry restrictions" under §1182(f), and that no prior §1182 order—43 in all by the time of that decision—had *ever* provided a specific expiration date, 585 U.S. at 687. *All* were thus invalid under Plaintiffs' maximalist—and untenable—theory here. In any event, *Doe #1* is distinguishable. *Doe #1*'s analysis turned on the condition underpinning Executive Order 9945—diminishment of uncompensated healthcare costs—which has no relevance here. *See Doe #1 v. Trump*, 957 F.3d 1050, 1065-66 (9th Cir. 2020). In any event, given the President's unquestioned authority to set the refugee limit under §1157 at zero beginning in October 2025—*i.e.*, in just over six months—at the latest, there is no risk that the instant proclamation will be sustained until a problem is addressed that has "no apparent resolution." *Id*. at 1065.

  C. Plaintiffs next rely on this Court's decision in *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) ("*Hawaii I*"), *vacated as moot*, 583 U.S. 941, to claim that the President does not have the authority to issue the USRAP Order (at 11-12) because the INA does not permit the President to decrease the maximum allowable number of refugees to be admitted mid-year. The district court also relied extensively on *Hawaii I*, *see* Add. 351-53, 391-93, claiming that it was "vacated on other grounds" to imply it has precedential force. This is untrue and misleading—*Hawaii I* was vacated by the Supreme Court as moot under *Munsingwear*, 583 U.S. at 941, to "clear[] the path for future relitigation of the issues between the parties

4

and eliminates a judgment, review of which was prevented through happenstance," *U.S. v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950). In any event, the USRAP Order does not seek to decrease the maximum mid-year; instead, the President invoked his *separate, standalone* authority under the INA to suspend admission of a "class of aliens" (namely, refugees), with case-by-case exceptions. Given that the maximum is just that—a maximum, not a minimum—there is simply no conflict between §§1157 and 1182(f). *See Hawaii*, 585 U.S. at 684 (§1182(f) permits "entry restrictions in addition to those elsewhere enumerated in the INA"). Plaintiffs' contrary assertion would improperly elevate this Court's vacated decision in *Hawaii I* over the Supreme Court's binding decision in *Hawaii*.

D. Plaintiffs' last-ditch attempt (at 12) to challenge the USRAP Order as conflicting with 8 U.S.C. §1157(a)(2)(A) also fails. The plain text of §1157(c)(2)(A) specifies that once a qualifying relative of a refugee is admitted, they will have the same refugee status as their petitioner family member. Plaintiffs' reading of the statute takes the word "shall" out of context and ignores that admission of follow-to-join refugees is still subject to the numerical limitations in §1157(a) and entry restrictions under §1182(f), both of which may prevent follow-to-join refugees' admission.

Plaintiffs' reading also fails to reconcile §1157(c)(2)(A) with 8 U.S.C. §1201(h), which directs that "[n]othing in this chapter shall be construed to entitle

5

any alien … to be admitted [to] the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible." Were Plaintiffs' reading correct, a U.S. Customs and Border Protection officer could never deny an inadmissible follow-to-join refugee admission. That cannot be so.[1]

## II. There is No APA Jurisdiction to Review Plaintiffs' Claims

Plaintiffs fail to meaningfully defend the district court's exercise of APA jurisdiction, offering the conclusory assertion that "the District Court has carefully and methodically rejected their threshold claims that judicial review is unavailable" (at 12-13). But, as Defendants explained (at 11-12, 14-17), Defendants are likely to succeed on appeal because the Tucker Act provides an adequate remedy for the contract related claims and those claims lack merit because the agency has wide discretion to operate the statutes governing the refugee admissions program and its many components.

A. The funding claims are Tucker Act claims because they concern contract performance and payments. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2010). Plaintiffs dress up their claims in "equitable" language

---

[1] As explained previously (at 11-13), Plaintiffs' APA challenges regarding refugee admissions are necessarily dependent on their statutory claims and fail on that basis. Nor do Plaintiffs offer any response to Defendants' argument (at 13), that Plaintiffs' APA claims are not redressable under Article III unless Plaintiffs also prevail on their statutory claims.

6

(at 13-14), arguing for "forward-looking remedies: an injunction, and ultimately vacatur, of the unlawful agency actions suspending all USRAP processing and URSAP-related funding." But courts must look to the complaint's "substance, not merely its form," *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995), and the District Court in Washington, D.C. properly saw through this attempt to impose specific performance on contracts that can be terminated at any time. *See U.S. Conference of Catholic Bishops v. U.S. Dep't of State*, No. 25-465, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025) (court lacked jurisdiction over a resettlement agency's APA claims challenging the pause and termination of cooperative agreements for reception and placement services as "[s]uch a request for an order that the government 'must perform' on its contract is one that 'must be resolved by the Claims Court'").

  B. Plaintiffs misread (at 16) 8 U.S.C. §§ 1522(a) and (b), which *authorize* but do not *require*, a refugee resettlement funding program. The government is free to suspend or terminate cooperative agreements should the terms allow and pausing cooperative agreements does not prevent organizational Plaintiffs from fulfilling any statutory obligations as their obligations are paused too. In any event, Plaintiffs (and the district court) are simply wrong (at 16, Add. 369) that the agency's decision to suspend domestic refugee funding was arbitrary and capricious. The agency's interpretation was reasonable and the district court should not substitute its (or

7

Plaintiffs') judgment for the agency's. *See Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### III. Due process

Plaintiffs tellingly have no answer to the Supreme Court's decision in *Dep't of State v. Muñoz*, 602 U.S. 899 (2024).

### IV. Defendants Will Suffer Irreparable Harm Absent A Stay

Plaintiffs advance (at 7-8) lack-of-irreparable-harm arguments that can be readily dispatched for four reasons.

*First*, Plaintiffs *never* deny the Government's contention that it would be "difficult or impossible to reverse" grants of refugee status made during the pendency of this appeal. Mot. at 18-19; *see* Opp. at 7-8. A "defining characteristic of sovereignty" is "the power to exclude from the sovereign's territory people who have no right to be there." *Arizona v. United States*, 567 U.S. 387, 417 (2012) (Scalia, J., concurring in part and dissenting in part). Compelling the government to admit people whose admission the President has determined to be contrary to the interests of the United States inflicts quintessential *sovereign* injury, which is by definition irreparable.

*Second*, the district court's injunction prevents the President from exercising core immigration powers, which is "itself an irreparable injury." *Doe #1*, 957 F.3d at 1084 (Bress, J., dissenting) (citing *Maryland v. King*, 567 U.S. 1031, 1303 (2012)

8

(Roberts, C.J., in chambers)). Plaintiffs say (at 7) that the injunction merely preserves "the status quo," but the status quo just as easily could be after the Order was issued and before the litigation was commenced: "there is no sound or principled reason to pick one over another as a rule to apply in all cases." *Labrador v. Poe*, 144 S.Ct. 921, 930 (2024) (Kavanaugh, J., concurring in stay).

*Third*, Plaintiffs wrongly assert (at 7-8) that the continued entry of refugees causes no harm. The President has determined that "the United States has been inundated with record levels of migration" with some jurisdictions "declar[ing] states of emergency because of increased migration." Add. 342. Plaintiffs provided no basis to second guess that determination.

*Fourth*, Plaintiffs attempt (at 7) to discount the irreparable harm to Defendants by contending that Defendants' objectives are "unlawful." But that merely repeats their merits arguments, and the Supreme Court has made clear that an injunction "does not follow from success on the merits as a matter of course," *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008). Anyway, in a *preliminary* injunctive posture, the harm to the government and public from an injunction during the pendency of litigation must be assessed on the assumption that the government will ultimately prevail on the merits.

9

## V. A Universal Injunction is Overbroad

The universal injunction issued by the district court flouts limitations on Article III courts arising both from the Constitution and principles in equity. Relief must be narrowly tailored to the parties before the court and must be "limited to the inadequacy that produced [plaintiffs'] injury in fact," *Gill v. Whitford*, 585 U.S. 48, 66 (2018), particularly where plaintiffs utterly fail to show that "complete relief" could not be provided by a narrower injunction limited to any bona fide, identified plaintiffs subjected to the challenged actions, *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018).

In attempting to defend the universal sweep of the district court's injunction (at 18-20), Plaintiffs maintain that a universal injunction is necessary because organizational Plaintiffs operate in multiple states and are harmed by reduced refugee admissions. But organizational plaintiffs have no vested right to serve some minimum number of refugees; they are contractors, authorized to serve only as grantees providing services to those refugees whom the Executive admits. Organizational plaintiffs have no Article III standing to demand the admission of refugees; their standing is based solely on the reduction in funding. Receiving less money for performing less work is not an irreparable injury and certainly does not authorize universal relief to non-parties. If anything, it permits the contract remedies laid out in the cooperative agreements and is irrelevant now that contracts have been

10

terminated. Regardless, the district court did not issue universal relief on this basis, reason enough for this Court to stay it—it reasoned erroneously that all immigration injunctions must be universal—and on top of all, the argument relies on a theory of organizational standing foreclosed by binding precedent. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395-96 (2024); *Arizona Alliance v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024).

Plaintiffs insist on maximalist scope of relief, notwithstanding that they are only two of 10 agencies and one of countless subcontractors. Plaintiffs' (noncognizable) desire to receive more funding is insufficient to overcome the substantial irreparable harm the government will suffer if compelled to disburse funds to *all* resettlement agencies (including non-parties). *See* Div. F, Title III of Pub. L. No. 118-47, 138 Stat. 744 (providing $3,928,000,000 for "necessary expenses not otherwise provide for … and other activities to meet refugee and migration needs …").

Plaintiffs lastly contend that non-party resettlement agencies must be covered by the injunction because continuing the USRAP with only the organizational Plaintiffs providing domestic resettlement services would result in a "fragmented" USRAP. But that runs headfirst into Ninth Circuit precedent rejecting reflexive invocation of universal remedies on that basis in the immigration context. *See, e.g.*, *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019).

Continuation of the USRAP using only organizational Plaintiffs for domestic services would reduce the number of refugees receiving assurances and being admitted but would not fragment the program. And the INA does not require that the annual refugee ceiling be reached. *See* 8 U.S.C. § 1157.

This Court has repeatedly stayed or reversed the universal scope of injunctions issued by district courts. *E. Bay*, 934 F.3d at 1029; *Azar*, 911 F.3d at 584. It should do so again here.

## CONCLUSION

For the foregoing reasons, this Court should stay the district court's preliminary injunction pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST FLENTJE
*Acting Director*

*/s/ Nancy K. Canter*
NANCY K. CANTER
*Senior Litigation Counsel*

JOSEPH MCCARTER
ALEXANDRA YEATTS
*Trial Attorneys*

U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Washington, DC 20005

*Counsel for Defendants*

13

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, I certify that foregoing motion complies with the type-volume limitation because it contains 2,597 words. This motion also complies with the typeface and type style requirements because it is proportionately spaced and has a 14-point Times New Roman typeface.

Dated: March 18, 2025

/s/ Nancy K. Canter
NANCY K. CANTER
Attorney for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2025, counsel for Respondent electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system and that service will be accomplished via the CM/ECF system.

|  |  |
|---|---|
|  | /s/ Nancy K. Canter |
|  | NANCY K. CANTER |
| Dated: March 18, 2025 | Attorney for Respondent |