Nos. 25-1313, 25-1939

# In the United States Court of Appeals for the Ninth Circuit

PLAINTIFF PACITO et al.,

*Plaintiffs-Appellees,*

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Washington
Case No. 2:25-cv-255-JNW

## PLAINTIFFS-APPELLEES' RESPONSE TO DEFENDANTS-APPELLANTS' MOTION FOR CLARIFICATION OR RECONSIDERATION

Linda Evarts
Deepa Alagesan
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
levarts@refugeerights.org
dalagesan@refugeerights.org

Harry H. Schneider, Jr.
Jonathan P. Hawley
Shireen Lankarani
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
(206) 359-8000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com

*Counsel for Plaintiffs-Appellees*

[Additional counsel on signature page]

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellees state that no Plaintiff-Appellee has a parent corporation and no publicly held corporations own 10% or more of a Plaintiff-Appellee's stock.

*s/ Harry H. Schneider, Jr.*

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..................................................... i

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 4

ARGUMENT ........................................................................................... 8

    I.    Defendants fail to satisfy Circuit Rule 27-10 and their motion should be denied on this basis alone. ............................. 8

    II.    The Stay Order clearly denied Defendants' stay motion as "applie[d]" to conditionally approved refugees. ........................ 10

    III.    The Stay Order does not direct a resuspension of funding. ...... 12

    IV.    The Stay Order's citation to Section 1182(f) does not compel a different conclusion as to the funding-related aspects of the First Injunction ................................................. 16

CONCLUSION ......................................................................................... 17

CERTIFICATE OF COMPLIANCE ............................................................... 19

CERTIFICATE OF SERVICE ...................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Department of Education v. California,*
No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025) (per curiam) ...................................................................................17

*Rissetto v. Plumbers & Steamfitters Local 343,*
94 F.3d 597 (9th Cir. 1996).............................................14–15

*Trump v. Hawai'i,*
585 U.S. 667 (2018) ....................................................6, 16–17

**STATUTES**

8 U.S.C. § 1182(f) ................................................................6, 16–17

**RULES**

Circuit Rule 27-10 ....................................................................8–10

**OTHER AUTHORITIES**

Exec. Order No. 14163, 90 Fed. Reg. 8,459 (Jan. 20, 2025) ...........2, 4, 11, 15

Exec. Order No. 14169, 90 Fed. Reg. 8,619 (Jan. 20, 2025)......... 4, 13, 16–17

## INTRODUCTION

Under the guise of a motion for clarification, Defendants seek to rewrite this Court's March 25 stay order (the "Stay Order") to relieve themselves of any obligation to comply with the District Court's February 28 preliminary injunction (the "First Injunction"). But the Stay Order is clear on its face: Defendants' stay motion was "denied to the extent the district court's preliminary injunction order applies to individuals who were conditionally approved for refugee status . . . before January 20, 2025." Dkt. 28.1 at 1.[1] The First Injunction thus remains in effect as applied to that subset of refugees; this Court stayed the First Injunction "[i]n all *other* respects." *Id.* at 2 (emphasis added).

This clarity notwithstanding, Defendants ask the Court to endorse their (mis)belief that the First Injunction was stayed in *all* respects. *See generally* Dkt. 35.1. While their pending motion is notably lacking in detail on the implications of their interpretation of the Stay Order, Defendants were crystal clear before the District Court: the Stay Order, they claimed, "merely precludes the Government from revoking the conditional approval" of these refugees and "does not require the Government to take steps to

---

[1] References to entries on this Court's docket in case number 25-1313 are cited as "Dkt." References to entries on the District Court's docket are cited as "Dist. Ct. Dkt."

facilitate the entry of such conditionally approved individuals." Dist. Ct. Dkt. 97 at 4. This exceedingly narrow interpretation runs up against an immediate problem, one that the Stay Order identifies: Executive Order No. 14163 (the "Refugee Ban EO") "d[id] not purport to revoke the refugee status" of conditionally approved refugees. Dkt. 28.1 at 1. As such, Plaintiffs did not challenge any such revocation, the District Court did not order such relief, and this Court's partial stay of the First Injunction certainly did not grant additional relief that has never been requested.

Instead, under the operative language of the Stay Order, the First Injunction remains in effect as it "*applies*" to conditionally approved refugees. *Id.* (emphasis added). To understand Defendants' current legal obligations, one must therefore look back to the First Injunction—which is precisely what the District Court has done. *See* Dist. Ct. Dkts. 92, 104, 108. Far from "redrafting" the Stay Order, Dkt. 35.1 at 8, the District Court has merely enforced the First Injunction as narrowed by the Stay Order's plain language. It is ultimately Defendants, not Plaintiffs or anyone else, who are trying to rewrite the Stay Order—by ignoring that this Court partially *denied* their request for a stay.

Defendants' argument that the District Court has misapplied the Stay Order as it relates to the suspension of funding for the U.S. Refugee

Admissions Program ("USRAP") amounts to a bait and switch. One day after the District Court granted the First Injunction, Defendants *terminated* all but one of the USRAP-related funding agreements—and thereafter claimed that the First Injunction became moot as to the suspension of USRAP funding. *See, e.g.*, Dkt. 5.2 at 17; Dkt. 17.1 at 10–11. Incredibly, Defendants now suggest that the Stay Order's silence on this point—which followed their assertion that the funding suspension no longer imposed a redressable injury—somehow "*requires*" that the funding be resuspended. Dist. Ct. Dkt. 97 at 7 (emphasis added). Put plainly, Defendants cannot read into the Stay Order a tacit ruling on an issue they argued was moot and not even before the Court.

Defendants' manipulation of the Stay Order's scope is little more than an effort to avoid compliance with another of the District Court's preliminary-injunction orders (the "Second Injunction")—not currently before this panel—that enjoined the termination of refugee-related funding as a necessary step to ensure Defendants' compliance with the First Injunction and Stay Order. *See* Dist. Ct. Dkt. 79 at 18, 31–33. But the Stay Order neither allows nor requires Defendants to ignore the District Court's orders, and no clarification of this basic point is needed.

Indeed, motions to clarify or reconsider are disfavored in this Court, and Defendants do not even address the applicable legal standard, let alone meet it. Far from identifying misunderstood points of law or changed circumstances, their motion instead mischaracterizes the Stay Order and the District Court's rulings. Ultimately, no further action is needed to interpret the Stay Order, and Defendants' motion should be denied.

## FACTUAL BACKGROUND

On his first day in office, President Trump issued the Refugee Ban EO, barring refugee admissions to the United States (as well as decisions on refugee cases) effective one week later. Exec. Order No. 14163, 90 Fed. Reg. 8,459 (Jan. 20, 2025). The Agency Defendants opted to suspend all refugee processing and admissions *immediately*—even before the Refugee Ban EO was to take effect—cancelling travel scheduled for thousands of refugees, including those like Plaintiff Pacito and his family who had been in processing for years and had already sold their possessions in preparation for relocation to the United States. Dist. Ct. Dkt. 45 at 11–14. Four days later, the Agency Defendants relied on a different executive order—one directing a pause on international development assistance to allow for a "review" of such programs, Exec. Order No. 14169, 90 Fed. Reg. 8,619 (Jan. 20, 2025) (the "Foreign Aid EO")—to require a complete suspension of all funding for

4

domestic support for refugees in the United States, as well as for processing abroad of refugees for admission to this country, Dist. Ct. Dkt. 45 at 12–13.

Six individual refugees and their U.S.-based sponsors, along with three resettlement partner organizations, sued and moved to preliminarily enjoin the indefinite suspension of the USRAP, which had been effectuated by both the suspension of refugee processing and admissions and the suspension of funding for all USRAP-related work. Dist. Ct. Dkts. 1, 45. On February 25, 2025, the District Court orally granted Plaintiffs' motion for a preliminary injunction and indicated that a written order would shortly follow. Dist. Ct. Dkt. 39.

One day after that hearing and oral order, Defendants terminated all but one of the contracts for USRAP-related work done by domestic resettlement agencies. Dist. Ct. Dkt. 45 at 11 n.2. Defendants subsequently argued before this Court that the terminations mooted the District Court's injunction as to the funding suspension, explaining that the suspension was "irrelevant" in light of the subsequent terminations, Dkt. 17.1 at 10–11, such that "[a]ny injury Plaintiffs might have suffered . . . no longer exists . . . and [is] therefore no longer redressable," Dkt. 5.2 at 17.

After the District Court issued its written order on the First Injunction, Dist. Ct. Dkt. 45, Defendants moved for an emergency stay before this Court,

Dkt. 5.2.[2] In the weeks that followed, Defendants informed the District Court that, though they were working "diligently" to comply with the First Injunction, their ability to do so was limited because their actions had already resulted in "significant deterioration of functions throughout the USRAP." Dist. Ct. Dkt. 62 at 2. One of the few ways Defendants claimed to be implementing the First Injunction was by allowing a small subset of refugees—spouses and minor children of recently resettled refugees seeking to reunite in the United States—to organize their own travel to the United States after their case processing concluded. *Id.* at 4.

On March 25, this Court issued the Stay Order and denied in part Defendants' motion for a stay "to the extent the district court's preliminary injunction order applies to individuals who were conditionally approved for refugee status by the United States Citizenship and Immigration Services before January 20, 2025." Dkt. 28.1 at 1. The Court granted the motion "[i]n all other respects," citing *Trump v. Hawai'i*, 585 U.S. 667, 684 (2018), as it concerns the President's authority to impose entry restrictions under 8 U.S.C. § 1182(f), Dkt. 28.1 at 2.

---

[2] Plaintiffs, in turn, supplemented their complaint to add a challenge to the funding terminations and moved for a preliminary injunction of those terminations. Dist. Ct. Dkts. 56–57.

In the days that followed, Defendants decided to interpret the Stay Order as staying the First Injunction in *all* respects, preserving only the conditional-approval status of refugees abroad but otherwise requiring no action from Defendants to resume processing them. *See, e.g.*, Dist. Ct. Dkt. 97 at 4. But rather than inform Plaintiffs and the District Court of this decidedly circumscribed interpretation of the Stay Order, Defendants—without notice—instructed their consular posts to stop permitting refugee spouses and minor children to organize their own travel to the United States. Dist. Ct. Dkt. 101 at 3; *see also, e.g.*, Dist. Ct. Dkt. 90-11. Meanwhile, on March 24, the District Court issued the Second Injunction after concluding that Defendants were unable to comply with the (narrowed) First Injunction without funding resettlement partners—thus requiring Defendants to restore the terminated agreements that were necessary to implement the First Injunction. Dist. Ct. Dkt. 79 at 18, 31–33. In their notices reinstating the terminated agreements, Defendants "immediately" resuspended all funding, Dist. Ct. Dkt. 96 at 2, which they claimed was required by the Stay Order, Dist. Ct. Dkt. 97 at 7.

The District Court scheduled a hearing on Defendants' compliance with its injunctions on April 9. Dist. Ct. Dkt. 91. It was only in the hours

before that hearing that Defendants filed the instant motion.[3] Following the hearing, the District Court concluded that Defendants had failed to follow the First and Second Injunctions and ordered them to comply, requiring the parties to meet and confer and file a joint submission to bring Defendants into compliance. Dist. Ct. Dkt. 108 at 5–6.

## ARGUMENT

### I. Defendants fail to satisfy Circuit Rule 27-10 and their motion should be denied on this basis alone.

Under the Court's rules, a party seeking clarification, reconsideration, or modification of an order "shall state with particularity the points of law or fact which, in the opinion of the movant, the Court has overlooked or misunderstood" or the "[c]hanges in legal or factual circumstances which may entitled the movant to relief." Cir. Rule 27-10(a)(3). Such motions are "not favored"; they are appropriate "*only* where counsel believes that the Court has overlooked or misunderstood a point of law or fact, or where there

---

[3] Defendants never explained why they waited until the eleventh hour to file this motion given that the District Court's interpretation of the Stay Order was known to them by April 4, when the District Court denied Defendants' request to stay the Second Injunction pending appeal. *See* Dist. Ct. Dkt. 92 at 4. This delay stands in marked contrast to the speed with which Defendants resuspended all refugee processing and admissions, as well as all refugee-related funding, without notice to the District Court or Plaintiffs. *See, e.g.*, Dist. Ct. Dkt. 90-11 (demonstrating resuspension of follow-to-join refugee processing).

is a change in legal or factual circumstances after the order which would entitle the movant to relief." Cir. Adv. Comm. Note to Rule 27-10 (emphasis added).

Defendants do not discuss this standard in their motion, and they certainly do not meet it. They do not identify any point of law or fact that this Court overlooked or misunderstood in issuing the Stay Order or any change in legal or factual circumstances that entitles them to relief. Instead, the sole ground for their motion for clarification is a manufactured "interpretive dispute" about the meaning of the Stay Order. Dkt. 35.1 at 2. But the District Court interpreted the Stay Order to mean what it says: Defendants' motion to stay was "denied to the extent the district court's preliminary injunction applies to individuals who were conditionally approved for refugee status . . . before January 20, 2025." Dkt. 28.1 at 1. Even if an "interpretive dispute" were a cognizable ground for a motion under Circuit Rule 27-10—and it is not—there is no legitimate dispute to resolve here.

Moreover, Defendants' alternative motion for reconsideration—based solely on "all of the reasons expressed in [their] prior stay briefing," Dkt. 35.1 at 9, not any new factual or legal developments—is wholly improper under Circuit Rule 27-10. That rule does not allow Defendants a second bite at the apple, nor does it require this Court to re-read Defendants' earlier briefing

and second-guess the Stay Order. Defendants' request for reconsideration should be rejected no less than their request for clarification.

## II. The Stay Order clearly denied Defendants' stay motion as "applie[d]" to conditionally approved refugees.

Even if Defendants had identified a viable basis for their motion, their proffered "interpretive dispute" is little more than wishful thinking. Defendants accuse the District Court and Plaintiffs of "redrafting" the Stay Order, Dkt. 35.1 at 8, but it is Defendants themselves who seek to rewrite that order by ignoring its operative language and seeking to stay the First Injunction in *all* respects.

This Court denied Defendants' stay request "to the extent the [First Injunction] applies to individuals who were conditionally approved for refugee status . . . prior to January 20, 2025." Dkt. No. 28 at 1. As to that subset of refugees, Defendants must continue to "appl[y]" the requirements of the First Injunction—including "processing, admitting, and providing resettlement support" to conditionally approved refugees "and funding USRAP partners to the extent necessary to do so." Dist. Ct. Dkt. 104 at 7; *see also* Dist. Ct. Dkt. 45 at 61 (First Injunction order enjoining Agency Defendants from "[s]uspending or implementing the suspension of refugee processing, decisions, and admissions" and "[s]uspending or implementing the suspension of USRAP funds").

Defendants' arguments to the contrary do not withstand scrutiny. Although the instant motion contains little reasoning or explanation, Defendants did not mince words before the District Court, where they asserted that the Stay Order "merely precludes the Government from revoking the conditional approval" of refugees and "does not require the Government to take steps to facilitate the entry of such conditionally approved individuals." Dist. Ct. Dkt. 97 at 4. But Defendants' authority to revoke conditional approvals was *never at issue* because—as this Court noted—the Refugee Ban EO "d[id] not purport to revoke the refugee status" of conditionally approved refugees. Dkt. 28.1 at 1. As such, Plaintiffs did not challenge any revocation of conditional approvals. The First Injunction did not grant relief against this imagined injury, and the Stay Order did not grant a new form of relief not sought by Plaintiffs.

Instead, the First Injunction concerned the likely unlawfulness of Defendants' suspension of refugee processing and admissions—*not* the revocation of statuses already granted—and of the funding required for refugee processing and resettlement in the United States. The District Court determined that it was appropriate and necessary in light of the irreparable harms Plaintiffs face to preliminarily enjoin Defendants' suspension of refugee processing, admissions, and funding as to *all* refugees. Dist. Ct.

Dkt. 45 at 59–60. This Court, in turn, came to a different conclusion about the appropriate scope of preliminary relief pending appeal and allowed the First Injunction to remain in effect as to a narrower subset of refugees. *See* Dkt. 28.1 at 1–2. Specifically, the Stay Order preserves the protections against "the most serious irreparable harms" identified in the First Injunction, Dist. Ct. Dkt. 104 at 5, for refugees furthest along in the process— those like Plaintiff Pacito, who sold all of his belongings in anticipation of flying to safety in the United States and was forced to shelter with his wife and baby in the parking lot of the U.S. embassy in Nairobi after their travel was abruptly cancelled, Dist. Ct. Dkt. 45 at 13–14. Under the plain terms of the Stay Order, the First Injunction still "applies" to these refugees, including processing, decisions, and admissions and the funding needed to accomplish these ends.

## III. The Stay Order does not direct a resuspension of funding.

Even as they read the operative language out of the Stay Order, Defendants claim that this Court implicitly addressed an injury that *they themselves* represented was moot—namely, the suspension of USRAP-related funding that was terminated by the time Defendants moved for a stay—and they are using this surreptitious ruling to justify their continued noncompliance with the District Court's orders. There is no "interpretive

dispute" here: simply put, the Stay Order does not permit, let alone require, Defendants' ongoing noncompliance.

As discussed above, one day after the District Court orally granted Plaintiffs' first preliminary-injunction motion, Defendants terminated all but one cooperative agreement providing USRAP-related funding and then argued that the First Injunction was consequently moot as to the suspension of refugee funding. *See, e.g.*, Dkt. 17.1 at 10–11; Dkt. 5.2 at 17; Dist. Ct. Dkt. 61 at 2. Indeed, the funding suspension had become moot by Defendants' own terms.[4] Accordingly, given that the funding suspension no longer imposed a redressable injury, the Stay Order did not analyze that suspension (or, for

---

[4] Specifically, the Agency Defendants justified the suspension of funding for domestic refugee resettlement and refugee processing as a temporary pause necessary to allow for their review of purported "foreign assistance programs," as ordered by section 3 of the Foreign Aid EO. By that executive order's terms, the review period was to conclude with a "determination[] . . . on whether to continue, modify, or cease each foreign assistance program," at which time funding "may resume." Foreign Aid EO § 3(c)–(d). Accordingly, Defendants informed the District Court that their decision to terminate nearly all USRAP-related cooperative agreements reflected their "determination," at the conclusion of their review, that such funding was inconsistent with the Administration's priorities. *See, e.g.*, Dist. Ct. Dkt. 49-2 ¶ 4 (declaration from State Department official explaining that, "[o]n or about February 26, 2025, the process for individually reviewing each outstanding State Department grant and federal assistance award obligation concluded," at which time "[t]he Secretary of State made a final decision with respect to each such award"). Incidentally, Defendants have never explained why funding for *domestic* support for refugees in the United States and refugee processing to come to the United States qualify as "foreign assistance" under the Foreign Aid EO.

13

that matter, discuss the Agency Defendants' unjustifiable decision to apply a foreign aid-focused executive order to domestic refugee assistance) or assess Plaintiffs' Administrative Procedure Act claims challenging it.

Even though the Stay Order did not address the funding suspension— as Defendants themselves urged—Defendants have subsequently claimed before the District Court that the Stay Order somehow "*requires*" them to resuspend the cooperative agreements with resettlement partners. Dist. Ct. Dkt. 97 at 7 (emphasis added). This remarkable suggestion followed the Second Injunction, in which the District Court preliminarily enjoined the termination of the USRAP-related cooperative agreements after determining that the elimination of all refugee funding made compliance with the (narrowed) First Injunction impossible. *See generally* Dist. Ct. Dkt. 79.[5] Based on their misinterpretation of the Stay Order, Defendants have indeed resuspended the agreements. *See* Dist. Ct. Dkt. 97 at 2–3.

But Defendants cannot have it both ways: they cannot infer from the Court's silence a directive that funding be resuspended, especially where they previously argued that that issue was moot such that the Court need not address it. *See Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597,

---

[5] Notably, though Defendants have appealed the Second Injunction, they have not moved to stay it pending appeal.

600 (9th Cir. 1996) (party cannot "gain[] an advantage by taking one position, and then seek[] a second advantage by taking an incompatible position").

Try as Defendants might to divine a phantom directive that does not exist in the Stay Order, this Court was clear: the Stay Order maintains the First Injunction as it "applies" to conditionally approved refugees. Dkt. 28.1 at 1. This necessarily includes funding for refugee processing, admissions, and resettlement work performed by resettlement partners, as the District Court has recognized:

> Beginning with what the Ninth Circuit actually wrote, the court denied the Government's stay request "to the extent the district court's preliminary injunction order applies to individuals who were conditionally approved for refugee status" before January 20, 2025. That language preserves the mandates of the First Injunction for conditionally approved refugees—not merely the abstract designation of their status.

> Context reinforces this conclusion. The Ninth Circuit explained that "Executive Order No. 14163 does not purport to revoke the refugee status of individuals who received that status under the United States Refugee Admissions Program prior to January 20, 2025." This rationale illuminates the Circuit Court's intent: the First Injunction remains in force for conditionally approved refugees because the Executive Order did not purport to revoke their status.

> The Government's interpretation would reduce the Ninth Circuit's carveout to just a formality. If the Circuit intended only to preserve a hollow designation while permitting the Government to suspend all processing, admissions, and support for conditionally approved refugees, one would expect the court

to say so. It did not. The better reading is that when the Ninth Circuit preserved the First Injunction as it applies to conditionally approved refugees, it necessarily preserved the protections that give that status meaning, including continued processing and the services required to realize their admission. Otherwise, what purpose would be served by recognizing the carveout in the first place? This Court declines to read the Ninth Circuit's order in a manner that would render its carveout practically meaningless.

Dist. Ct. Dkt. 104 at 3–4 (citations omitted) (quoting Dkt. 28.1 at 1). Likewise, this Court should not accept Defendants' invitation to interpret the Stay Order in a manner that renders it illusory—and certainly should not read into the Stay Order a *requirement* that Defendants resuspend funding for refugee-resettlement partners.

## IV. The Stay Order's citation to Section 1182(f) does not compel a different conclusion as to the funding-related aspects of the First Injunction.

Finally, the Stay Order's citation to 8 U.S.C. § 1182(f) and *Trump v. Hawai'i* does not somehow change the nature of the issues, the operative language of the Stay Order, or its effect. The funding suspension was purportedly prompted by the Foreign Aid EO, which did not rely on or even mention Section 1182(f). This makes sense given that Section 1182(f) speaks only to the President's authority to limit the "entry" of noncitizens, not to provision of services to people in the United States. Moreover, it was the State Department, *not* the President, that suspended funding under the

16

cooperative agreements when it construed the words "United States foreign development assistance" in the Foreign Aid EO to include funding for domestic support for refugees. *See* Dkt. 14.1 at 15; *see also* Dist. Ct. Dkt. 45 at 41–42 (agencies have no power under Section 1182(f)). Ultimately, that *Trump v. Hawai'i* was the *only* case cited in the Stay Order further confirms that this Court did not address the funding suspension (an issue that was, in any event, mooted by Defendants' termination of the cooperative agreements).[6]

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

---

[6] While Defendants have not argued any legal or factual change justifying reconsideration, *see supra* pp. 8–10, in the event they belatedly raise on reply the U.S. Supreme Court's recent stay of a preliminary injunction reinstating terminated education contracts, *see Dep't of Educ. v. California*, No. 24A910, 2025 WL 1008354 (U.S. Apr. 4, 2025) (per curiam), that order relied on decades-old Supreme Court precedent and is, at any rate, easily distinguishable from the facts of this case. Here, individual refugees—who are not parties to any agreement with the government—and resettlement partners challenge Defendants' indefinite suspension of the statutorily mandated USRAP, which was effectuated by suspending all refugee processing and eliminating all funding for refugee-related work. Given that Plaintiffs "assert rights derived from statutory mandates, not contractual promises, and seek equitable enforcement of statutory obligations, not contractual remedies," the District Court properly exercised jurisdiction. Dist. Ct. Dkt. 104 at 5–7 (distinguishing *Department of Education*).

Respectfully submitted this 15th day of April, 2025.

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT

Linda Evarts
Deepa Alagesan
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
levarts@refugeerights.org
dalagesan@refugeerights.org

Melissa Keaney
P.O. Box 2291
Fair Oaks, California 95628
(646) 939-9169
mkeaney@refugeerights.org

Laurie Ball Cooper
650 Massachusetts Avenue NW,
Suite 600
Washington, D.C. 20001
(516) 732-7116
lballcooper@refugeerights.org

PERKINS COIE LLP

By: *s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr.
Jonathan P. Hawley
Shireen Lankarani
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
(206) 359-8000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com

John M. Devaney
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
(202) 654-6200
JDevaney@perkinscoie.com

Joel W. Nomkin
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
(602) 351-8000
JNomkin@perkinscoie.com

Nicholas J. Surprise
33 East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460
NSurprise@perkinscoie.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6) and that the response complies with the page limit of Circuit Rule 27-1(1)(d).

*s/ Harry H. Schneider, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the attached document with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 15, 2025.

*s/ Harry H. Schneider, Jr.*