**Nos. 25-1313, 25-1939**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**PACITO, et al.**,

          Plaintiffs-Appellees,

v.

**DONALD J. TRUMP, et al.**,

          Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Washington
District Court Case No. 2:25-cv-255

**REPLY IN SUPPORT OF MOTION FOR CLARIFICATION
OF ORDER GRANTING A STAY, OR, IN THE ALTERNATIVE,
RECONSIDERATION UNDER CIRCUIT RULE 27-10**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
DREW C. ENSIGN
  *Deputy Assistant Attorney General*
ERNESTO H. MOLINA
  *Deputy Director*
DAVID KIM
  *Senior Litigation Counsel*
  U.S. Department of Justice
  Civil Division
  Office of Immigration Litigation
LINDSAY W. ZIMLIKI
JOSEPH MCCARTER
ALEXANDRA YEATTS
  *Trial Attorneys*

## INTRODUCTION

There are currently two live disputes over the correct meaning of this Court's March 25, 2025 stay order: (1) does the order require that the Government *admit* those conditionally approved for refugee status prior to January 20, 2025; and (2) does the order require the Government to unsuspend and fund the cooperative agreements with organizational Plaintiffs-Appellees? *See* Dkt. 28.1. The Government reads the order to mean that it cannot revoke conditionally approved refugee status if the United States Citizenship and Immigration Services ("USCIS") granted that status prior to January 20, 2025, but "in all other respects" the order stayed the district court's preliminary injunction, including the processing, facilitation of travel, admission, provision of resettlement benefits after admission, and funding of cooperative agreements. The district court, on the other hand, interprets the Court's order to require all of the above—and is now proposing compliance measures based upon that interpretation. But that reading is wholly untenable as it transmutes "*all* other respects" into "only *some other respects*, at the discretion of the district court unless this Court *specifically* enjoined an aspect of its order." Reading "all" to mean "some" twists the meaning of those words beyond recognition.

Given this dispute, the Government seeks clarification and clarity for the parties and the lower court before the dispute grows any more protracted or gives

1

rise to new stay motions. The district court has issued a "compliance-framework" order with respect to the individuals who were conditionally approved for refugee status before January 20, 2025. Dist. Ct. Dkt. 108. The parties are to provide a joint submission by April 18, 2025, with a status conference to promptly follow to discuss the submission and establish a compliance framework as imposed by the district court. *Id.* Because this Court's clarification of its stay order would directly affect those proceedings, the Government respectfully requests that this Court issue its order resolving this matter with haste.

## ARGUMENT

**I. This Court's order simply requires the Government to preserve conditionally approved status, while staying the district court injunction "in all other respects."**

This Court's stay order is clear in its instruction that the Government cannot revoke the "conditionally approved . . . refugee status" that was granted by the USCIS before January 20, 2025. *Id.* at 1. This instruction was based on the Court's finding that Executive Order 14013 ("E.O.") did not purport to revoke the status of those who were conditionally approved for refugee status. *Id.*

Nothing in this Court's order, however, requires that the Government go well beyond preserving the conditionally approved refugee status to actually facilitating entry of those with conditional approval prior to January 20, 2025—which is the very question this Court would have to resolve in this appeal and the reason the

2

Government moved for a stay of the district court's injunction in the first place. It is telling that to reach this stretched reading, the Plaintiffs-Appellees quote the language of the *district court* order and not the language of *this Court's* order. Dkt. 44.1 at 10.

Plaintiffs-Appellees respond that the E.O. never purported to rescind their conditionally approved status, Dkt. 44.1 at 11, and they are correct. That is, in fact, the point; the stay order repeated the limited scope of the E.O. in that regard. Because the intent of the E.O. was not to revoke conditional approval, this Court made sure to prioritize the preservation of that conditional approval. The E.O. did, however, suspend *entry* of the conditionally approved refugees, which is specifically what Plaintiffs-Appellees have focused on in this action. And this Court, to its credit, clearly recognized that question lying at the heart of this litigation when it stayed the district court's February 28th preliminary injunction "*in all other respects*" and cited the Supreme Court's holding in *Trump v. Hawaii*, 585 U.S. 667, 684 (2018) (recognizing the President's "ample power [pursuant to § 1182(f)] to impose entry restrictions" (internal quotation marks omitted)). There is no serious argument to the contrary. Because 8 U.S.C. § 1182(f) empowers the President to suspend *entry* of aliens, the Government focused its motion on requesting a stay of an injunction that purports to *require* such entries, and it is entirely reasonable to understand this Court's stay order as recognizing the Government's interest in avoiding such an

3

outcome. Additionally, the Government rejects the district court's assumption that preserving conditionally approved status is a "hollow designation." Dkt. 44.1 at 15-16 (citing Dist. Ct. Dkt. 104 at 3-4). Preserving this status, and ensuring it does not lapse or expire while this litigation continues, is hardly a meaningless formality. *Id.*

Of course, *preserving* the status of those individuals who were conditionally approved for refugee status before January 20, 2025, should not be construed as requiring the processing and admission of that entire group—which, in any case, would be foreclosed by the refugee ceiling for Fiscal Year 2025. On information and belief, almost 130,000 individuals were conditionally approved for refugee approval before January 20, 2025. As of December 21, 2024, approximately 27,000 refugees had been admitted to the United States for Fiscal Year 2025. *See PRM Refugee Admissions Report as of Dec. 21, 2024.*[1] At the same time, the maximum number of refugees set by the last administration for Fiscal Year 2025 is 125,000 refugees. *See* Presidential Determination No. 2024-13, *Presidential Determination on Refugee Admissions for Fiscal Year 2025 Memorandum for the Secretary of State*, 89 Fed. Reg. 83767 (Sept. 30, 2024). Because the number of individuals with pre-January 20, 2025 conditional approvals exceeds the number remaining under the refugee ceiling for this fiscal year, it would be impossible for the Government to admit all

---

[1] *Available at* https://www.wrapsnet.org/documents/PRM%20Refugee%20Admissions%20Report%20as%20of%2031%20Dec%202024.xlsx (last visited Apr. 17, 2025).

conditionally approved applicants. Not only that, there is no legal requirement to admit 125,000 refugees this fiscal year; rather, that is the *maximum* number authorized by law. Indeed, over the past 25 years, the U.S. Refugee Admissions Program ("USRAP") has admitted on average only 86 percent of the refugee ceiling.[2]

Further, even assuming the Government *could* admit all pre-January 20, 2025 conditionally approved applicants, it could not do so before the end of the fiscal year (September 30). Post-adjudication processing can take months and is case-specific. Moreover, the INA reposes in Customs and Border Patrol ("CBP") the authority to deny admission to any conditionally approved refugee if, upon arrival at a U.S. port of entry, CBP determines that he or she is inadmissible. *See* 8 U.S.C. §§ 1185(d), 1201(h). Thus, again, the only sensible reading of this Court's order is that it does not require admission. In addition, the Government is in the process of resuming USRAP operations, but the restarting of the USRAP will take time. And even with the USRAP operating at maximum capacity, historically, admissions averaged only approximately a few thousand per month, far less than required to admit all conditionally approved refugees.

---

[2] Annual refugees admissions for fiscal years 1975-2024 and monthly refugee admissions for fiscal years 2001-2025 is publicly available at https://www.wrapsnet.org/admissions-and-arrivals/ (last visited Apr. 17, 2025).

In short, the Government's reading of the stay order comports with the E.O., the statute, and the Supreme Court's controlling caselaw. The Government respectfully asks that the Court clarify its stay order in light of this explanation or, alternatively, grant reconsideration.

## II. This Court's order did not require the Government to unsuspend and fund its cooperative agreements.

On the issue of the funding tied to the operation of the U.S. Refugee Admissions Program, Defendants-Appellants read this Court's order to allow the Government to continue suspension of the cooperative agreements for now (even assuming the district court had the power to separately enjoin their *termination*, which the Government vigorously disputes on multiple grounds). Plaintiffs-Appellees claim that the question of funding was not before this Court in considering the stay motion because the Government had argued the issue was mooted by the termination of the cooperative agreements. Dkt. 44.1 at 12 (citing Dkt. 17.1 at 10–11); Dkt. 5.2 at 17; Dist. Ct. Dkt. 61 at 2. This is simply not accurate. In its prior motion to stay the district court's February 28th order, the Government challenged the district court's decision to enjoin the suspension of cooperative agreements, arguing, *inter alia*, that the court failed to recognize that the suspension of the agreements accounted for the Government's consideration of reasonable alternatives. Dkt. 5.2 at 15-17. *After* presenting these arguments, the Government stated that because the cooperative agreements had later been terminated, Plaintiffs-

6

Appellees' alleged injury caused by the suspension was no longer redressable. *Id.* at 17. In their response to the Government's motion, however, Plaintiffs-Appellees argued that a nationwide injunction was necessary because "organizational Plaintiffs operate in multiple states and are harmed by reduced refugee admissions," and, of particular relevance here, continued to base their claimed harm on a reduction in funding. *Id.* Thus, clearly, the question of whether the lower court erroneously enjoined the suspension of the funding was squarely before this Court in considering the stay motion. Indeed, had this Court found the issue of funding—a prominent part of the district court's preliminary injunction, *see* Dist. Ct. Dkt. 79 at 30-37—to be moot, surely it would have made that finding and dismissed that portion of the stay, or at least alluded to it. Instead, it stayed the district court's injunction "in all other respects."

Given that context and the plain text of this Court's order, the district court flouted that order by reading it as requiring the Government to complete a long litany of items that directly implicate funding, including funding all of the "post-adjudication steps" (medical checks, security clearances, cultural orientation), obtaining sponsorship assurances, arranging travel, facilitating entry, and paying for resettlement benefits (i.e., employment training and placements, direct cash support, and English language training). *See* Dist. Ct. Dkt. 108 at 6-8. Plaintiffs-Appellees in their response claim that some amount of funding is necessary to assure resettlement

of the conditionally approved petitioners, Dkt. 44.1 at 16-17. But both interpretations are based on the false premise that the Government is obligated to admit those with conditional approval notwithstanding the E.O. and the Supreme Court's holding in *Hawaii*. As Defendants-Appellants have consistently argued, conditional approval of refugee status is not at all a *guarantee* of admission, which is a decision that a CBP officer must make based on a finding of admissibility when the conditionally approved individual presents at a port of entry. At bottom, this Court's order staying the district court's injunction could not have failed to account for the funding elements that are necessarily implicated in the operation of the USRAP, and the way these issues tie together simply confirms that Plaintiffs-Appellees are wrong in their interpretation of this Court's stay. The Court should thus clarify that the suspensions may remain in force or, alternatively, grant reconsideration.[3]

---

[3] Absent that relief, Defendants-Appellants will seek emergency relief from the district court's second injunction, which enjoined termination of the funding instruments—a type of relief the Supreme Court has since made clear is unavailable in actions brought under the Administrative Procedure Act. *See Dep't of Educ. v. California*, 145 S. Ct. 966 (2025). Contra Plaintiffs-Appellees' assertion that *Dep't of Educ.* is inapposite, Dkt. 44.1 at n.6, what the district court did here by forcing reinstatement of the contracts is materially identical to the relief the Supreme Court stayed in *Dept of Educ*. *Id.*, 145 S. Ct. at 968 (staying district court order that "enjoin[ed] the Government from terminating various education-related grants" and that required the Government "to pay out past-due grant obligations and to continue paying obligations as they accrue").

## CONCLUSION

For the reasons set forth above, this Court should grant the Government's motion for clarification and reiterate that "all other respects" means—as this Court said—"all other respects." Unless "all" somehow means "only some," this Court should clarify that the district court's reading of this Court's order was erroneous.

Because relevant proceedings concerning this issue are ongoing below, this Court should also issue an administrative stay of the district court's attempts to enforce its misinterpretation of this Court's stay order. But to the extent that this Court intended something different, it should reconsider those limitations under Circuit Rule 27-10.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

ERNESTO H. MOLINA
*Deputy Director*

*/s/ David Kim*
DAVID KIM
(IL Bar No. 6318223)
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Washington, DC 20005
Phone: 202-598-0114
Email: david.kim4@usdoj.gov

LINDSAY W. ZIMLIKI
ALEXANDRA YEATTS
JOSEPH MCCARTER
*Trial Attorneys*
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, I certify that foregoing motion complies with the type-volume limitation because it contains 2,024 words. This motion also complies with the typeface and type style requirements because it is proportionately spaced and has a 14-point Times New Roman typeface.

April 17, 2025

*/s/ David Kim*
DAVID KIM
Attorney for Defendants-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2025, counsel for Respondents electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system and that service will be accomplished via the CM/ECF system.

Dated April 17, 2025

*/s/ David Kim*
DAVID KIM
Attorney for Defendants-Appellants