FILED

APR 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PACITO; et al.,<br><br>        Plaintiffs - Appellees,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br><br>        Defendants - Appellants. | No. 25-1313<br>D.C. No.<br>2:25-cv-00255-JNW<br>Western District of Washington, Seattle<br><br>ORDER |
| PACITO; et al.,<br><br>        Plaintiffs - Appellees,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br><br>        Defendants - Appellants. | No. 25-1939<br>D.C. No.<br>2:25-cv-00255-JNW<br>Western District of Washington, Seattle |

Before: SILVERMAN, BADE, and DE ALBA, Circuit Judges.

      The government has moved for clarification or reconsideration of our March 25, 2025, order granting in part and denying in part its motion for an emergency stay of the district court's preliminary injunction. Our previous order denied the government's stay request "to the extent the district court's preliminary injunction

order applies to individuals who were conditionally approved for refugee status" by the United States Citizenship and Immigration Services (USCIS) before January 20, 2025. Dkt. 28 at 1. We reasoned that "Executive Order No. 14163 does not purport to revoke the refugee status of individuals who received that status under" the United States Refugee Admissions Program (USRAP) prior to that date. *Id.* Our order did not define conditional approval.

Before the district court, the parties have agreed that, for I-590 refugees, the term "means any applicant for whom, prior to January 20, 2025, USCIS granted conditional approval for refugee status, including by generating and/or transmitting a 'Notice of Eligibility for Resettlement' or equivalent document," and for I-730 refugees, the term means "successful completion of USCIS domestic processing (either the petition was approved and forwarded to the Department of State, or, the petition was sent to a USCIS international field office overseas)." *Pacito, et al. v. Trump, et al.*, 2:25-cv-00255-JNW, Dkt. 112 at 1 n.1 (W.D. Wash. Apr. 18, 2025) (Dist. Dkt.). Under these definitions, the parties have construed our carveout broadly enough to swallow the entire stay order. The government represents that "almost 130,000 individuals were conditionally approved for refugee approval before January 20, 2025." Dkt. 45 at 4. Plaintiffs clearly grasp that our order was intended to apply to those "refugees furthest along in the process . . . like Plaintiff Pacito, who sold all of his belongings in anticipation of flying to safety in the

2                                                                                                                    25-1313

United States and was forced to shelter with his wife and baby in the parking lot of the U.S. embassy in Nairobi after their travel was abruptly cancelled." Dkt. 44 at 12. Nevertheless, they believe our order applies to tens of thousands of individuals. *See* Dist. Dkt. 112 at 13 (arguing that the government has "proposed no measures to resume travel for the tens of thousands of refugee applicants who have completed the application process and been deemed ready for departure by" the government). Our order was not intended to compel the government to admit more refugees than authorized for the entire Fiscal Year 2025. *See* Presidential Determination No. 2024-13, Presidential Determination on Refugee Admissions for Fiscal Year 2025: Memorandum for the Secretary of State, 89 Fed. Reg. 83767 (Sept. 30, 2024) (setting the maximum number of refugees for Fiscal Year 2025 at 125,000).

The factors outlined in *Nken v. Holder*, 556 U.S. 418, 426 (2009), broadly favor a stay pending appeal. The first factor is the likelihood of success on the merits. As we indicated with our citation to *Trump v. Hawaii*, 585 U.S. 667 (2018), the government is likely to succeed on the merits. *See id.* at 684 ("By its terms, § 1182(f) exudes deference to the President in every clause."). The second factor is whether the stay applicant is likely to be irreparably injured absent a stay. *Nken*, 556 U.S. at 425. We concluded that there was little chance of irreparable harm to the government from permitting those refugee applicants who were

conditionally approved and in transit, as defined below, to complete their resettlement. We reasoned that such applicants could demonstrate a strong reliance interest on the government's approval process because they needed only to complete their arranged travel to the United States. In contrast, there is a significant chance of irreparable harm to the government from compelling it to process over 100,000 conditionally approved applications that it would otherwise be permitted to discontinue. The other two *Nken* factors—injury to third parties and the public interest—are best settled by deference to the President's "broad discretion to suspend the entry of aliens into the United States." *Hawaii*, 585 U.S. at 683–84.

Accordingly, the government's motion to clarify the scope of our previous order, Dkt. 35, is GRANTED. The stay request is denied to the extent that the district court's preliminary injunction order applies to individuals who met the following conditions on or before January 20, 2025: (1) the individual had an approved refugee application authorizing Customs and Border Protection to admit the individual "conditionally as a refugee upon arrival at the port within four months of the date the refugee application was approved," 8 C.F.R. § 207.4; (2) the individual was cleared by USCIS for travel to the United States; and (3) the individual had arranged and confirmable travel plans to the United States. The preliminary injunction remains in effect for these individuals only, and the

government must resume their processing, facilitation of travel to the United States, admission, and provision of resettlement benefits after admission. The preliminary injunction order is stayed in all other respects.