UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 9 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PACITO; et al., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; et al., <br><br> Defendants - Appellants. | No. 25-1313 <br> D.C. No. 2:25-cv-00255-JNW <br> Western District of Washington, Seattle <br><br> ORDER |
| PACITO; et al., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; et al., <br><br> Defendants - Appellants. | No. 25-1939 <br> D.C. No. 2:25-cv-00255-JNW <br> Western District of Washington, Seattle |

Before: SILVERMAN, BADE, and DE ALBA, Circuit Judges.

The government's Motion to Amend Order Granting a Stay, or, in the Alternative, for Clarification, Dkt. 61, is GRANTED IN PART, to the extent that we provide the following further clarification of our March 25, 2025 stay order, Dkt. 28, and our April 21, 2025 order clarifying the limited carveout from the stay, Dkt.

46. Our order should be interpreted narrowly, on a case-by-case basis, to apply to individuals with a strong reliance interest arising prior to January 20, 2025, comparable to Plaintiff Pacito. The government's motion is otherwise DENIED.

*Pacito, et al. v. Trump, et al.*, Nos. 25-1313, 25-1939

BADE, Circuit Judge, concurring in part, and dissenting in part:

As demonstrated by the continuing litigation over the scope of this court's March 25, 2025 order staying the district court's February 28 preliminary injunction, the limited carveout in the stay order for applicants conditionally approved for refugee status is untenable, and the factors outlined in *Nken v. Holder*, 556 U.S. 418, 434 (2009), favor a complete stay of the district court's preliminary injunction. Therefore, while I concur with the majority's order to the extent that it grants the government's second motion for clarification or to amend, Dkt. 61, I dissent, in part, because I would grant the government's request that we amend our March 25 stay order to eliminate the limited carveout.

I.

On February 25, 2025, the district court granted Plaintiffs-Appellees' motion for a preliminary injunction blocking the implementation of Executive Order 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8459 (Jan. 20, 2025). *Pacito, et al. v. Trump, et al.*, 2:25-cv-00255-JNW, Dkt. 39 (W.D. Wash.) (Dist. Dkt.). Three days later, the district court entered a written order "to elucidate [its] reasoning and define the parameters of the injunction further." Dist. Dkt. 45 at 2. On March 8, the government filed an emergency motion challenging the district court's "universal injunction" and seeking a stay

pending appeal. Dkt. 5. On March 25, after ordering an expedited response and reply, we granted the government's motion for a stay of the district court's preliminary injunction. Dkt. 28. Our order contained a limited carveout for "individuals who were conditionally approved for refugee status by the United States Citizenship and Immigration Services before January 20, 2025." Dkt. 28 at 1. Our order did not define conditional approval.

Following our March 25 stay order, both sides interpreted the limited carveout broadly: the government represented that "almost 130,000 individuals were conditionally approved for refugee approval before January 20, 2025," Dkt. 45 at 4, and Plaintiffs argued that the limited carveout applied to "tens of thousands of refugee applicants," Dist. Dkt 112 at 13. On April 9, 2025, the government filed a motion asking us to clarify the "limitations" of the carveout. Dkt. 35 at 9. The government explained that it could not "admit all conditionally approved applicants" because "the number of individuals with pre-January 20, 2025 conditional approvals exceeds the number remaining under the refugee ceiling for this fiscal year." Dkt. 45 at 4–5.

Recognizing that our language was imprecise, and that, as interpreted by the parties, the carveout risked "swallow[ing] the entire stay order," we clarified that the carveout applied only to individuals who, on or before January 20, 2025, were "in transit" and met all of the following criteria: "(1) the individual had an

approved refugee application authorizing Customs and Border Protection to admit the individual 'conditionally as a refugee upon arrival at the port within four months of the date the refugee application was approved,' 8 C.F.R. § 207.4; (2) the individual was cleared by USCIS for travel to the United States; and (3) the individual had arranged and confirmable travel plans to the United States." Dkt. 46 at 2, 4.  We explained that the carveout was intended to apply only to applicants who "could demonstrate a strong reliance interest on the government's approval process because they needed only to complete their arranged travel to the United States," and was not intended to compel the government to admit "tens of thousands of individuals." Dkt. 46 at 3–4.

On May 6, 2025, however, the government filed a second motion to clarify or amend the stay order, explaining that the district court has interpreted the carveout to apply to "all applicants who had any travel plans, including self-travel outside established USRAP processes, regardless of how far in the future—a number approximating 12,000" individuals.  Dkt. 61 at 4.  The government argues that "it has become clear . . . that ongoing collateral proceedings over injunction compliance are not workable," and it requests that we amend our prior order to "stay the district court's injunction in full." Dkt. 61 at 1.  I agree that the situation is not workable, and I would amend our order as requested.

II.

Developments in the continuing litigation after our March 25 stay order have shown that the factors outlined in *Nken*, 556 U.S. at 434, favor a complete stay. Throughout these proceedings, we have consistently emphasized that the government has shown a strong likelihood of success on the merits. Dkt. 28 at 2; Dkt. 46 at 3. *See Trump v. Hawaii*, 585 U.S. 667, 684 (2018) (explaining that 8 U.S.C. § 1182(f) "exudes deference to the President in every clause"). In devising the carveout, we relied on a mistaken belief that "there was little chance of irreparable harm to the government from permitting those refugee applicants who were conditionally approved and in transit . . . to complete their resettlement." Dkt. 46 at 3–4; *see Nken*, 556 U.S. at 434. In other words, the limited carveout was intended to apply narrowly to individuals with strong reliance interests like Plaintiff Pacito, who sold his family's belongings in anticipation of relocating, gave up the lease on his family's home, and was left sleeping in the parking lot of an IOM transit center when his transportation arrangements were abruptly cancelled. Dist. Dkt. 1 at 25–26 ¶¶ 137–42; Dist. Dkt. 45 at 13–14.

But the district court's compliance order issued on May 5, 2025—which requires that the government take immediate steps to facilitate the admissions of 12,000 individuals, Dist. Dkt. 119—demonstrates that this balancing is incorrect and that, instead, "irreparable injury [to the government] is the more probable or

likely outcome," *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). The carveout has created an untenable situation that (1) imposes a serious risk of irreparable harm to the government, (2) forces the district court into the improper role of micromanaging the winding down of the nation's refugee program during a pending appeal challenging the President's authority to halt that program, and (3) has resulted in continued protracted litigation in the district court over the scope of the carveout while the appeal of the preliminary injunction simultaneously proceeds.

In part, the confusion regarding the scope of the limited carveout in our March 25 stay order is due to the broad nature of the district court's preliminary injunction, which affects an unknown number of individuals and organizations around the globe. The difficulty in fashioning, and now clarifying, a workable, limited carveout to the stay order that avoids irreparable harm (the second *Nken* factor) to the government (the party that has shown a strong likelihood of success on the merits, which is the first and most important *Nken* factor) is exacerbated by our lack of information about the circumstances of the over 12,000 refugee applicants that the district court has decided fall within the carveout but who are not plaintiffs in this lawsuit. *See DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) ("Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit.");

*see also E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019). As shown by the continuing litigation over the scope of the March 25 stay order, the limited carveout has created an untenable situation that is an example of the problems that can result when a court "goes further than [addressing the injuries of the particular plaintiffs in the lawsuit], ordering the government to take (or not take) some action with respect to those who are strangers to the suit." *DHS*, 140 S. Ct. at 600 (Gorsuch, J., concurring). Therefore, I would grant the government's motion and stay the preliminary injunction in its entirety.

      I concur in part and respectfully dissent in part.