Nos. 25-1313, 25-1939

# In the United States Court of Appeals for the Ninth Circuit

PLAINTIFF PACITO et al.,

*Plaintiffs-Appellees,*

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Washington
Case No. 2:25-cv-255-JNW

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES

Linda Evarts
Deepa Alagesan
Mevlüde Akay Alp
Pedro Sepulveda, Jr.
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
levarts@refugeerights.org
dalagesan@refugeerights.org
makayalp@refugeerights.org
psepulveda@refugeerights.org

Harry H. Schneider, Jr.
Jonathan P. Hawley
Shireen Lankarani
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
(206) 359-8000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com

*Counsel for Plaintiffs-Appellees*

[Additional counsel on signature page]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION .........................................................................................1

ARGUMENT ............................................................................................. 3

    I.    *CASA* did not hold that nationwide injunctions are
        unconstitutional. ....................................................................... 3

    II.    *CASA* confirmed that broad injunctions are permissible
        when necessary to provide complete relief—the same
        standard applied by the District Court. ..................................... 3

    III.    *CASA* did not bar broad relief in APA cases, including at
        the preliminary stage..................................................................... 10

    IV.    *CASA* did not bar broad classwide relief, even where it
        precedes class certification.........................................................12

CONCLUSION ...........................................................................................13

CERTIFICATE OF SERVICE......................................................................15

i

# TABLE OF AUTHORITIES

**CASES**

*AARP v. Trump,*
145 S.Ct. 1364 (2025) (per curiam) ..................................................... 2, 12

*Al Otro Lado v. Wolf,*
952 F.3d 999 (9th Cir. 2020) ................................................................ 12

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ............................................................................. 6

*Doe #1 v. Trump,*
957 F.3d 1050 (9th Cir. 2020) ............................................................. 12

*E. Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ............................................................... 10

*E. Bay Sanctuary Covenant v. Garland,*
994 F.3d 962 (9th Cir. 2020) ............................................................... 10

*E. Bay Sanctuary Covenant v. Trump,*
354 F.Supp.3d 1094 (N.D. Cal. 2018) *aff'd sub nom. E. Bay
Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) ................. 11

*Gomez v. Trump,*
485 F.Supp.3d 145 (D.D.C. 2020) ........................................................ 11

*Kinney-Coastal Oil Co. v. Kieffer,*
277 U.S. 488 (1928) ............................................................................. 4

*Lui v. DeJoy,*
129 F.4th 770 (9th Cir. 2025) .............................................................. 9

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) ............................................................................. 4

*Shaw v. Hunt,*
517 U.S. 899 (1996) ............................................................................. 4

*Trump v. CASA, Inc.*,
   No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .................... passim

*Trump v. Hawai'i*,
   585 U.S. 667 (2018) ................................................................... 4

**STATUTES**

5 U.S.C. § 705 ............................................................................ 10

5 U.S.C. § 706 ....................................................................... 10-11

8 U.S.C. § 1522 ............................................................................ 8

**OTHER AUTHORITIES**

2 W. Rubenstein, *Newberg & Rubenstein on Class Actions* (6th
   ed. 2022 & supp. 2024) ......................................................... 12

## INTRODUCTION

The U.S. Supreme Court's decision in *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025), does not change the analysis of the appropriate scope of the District Court's preliminary injunctions for at least four reasons.

*First*, *CASA* did not hold (as Defendants urged this Court to conclude) that universal injunctions exceed federal courts' Article III authority. *See id.* at *6 n.4. Instead, *CASA* considered equitable powers under the Judiciary Act of 1789 and the well-settled ability of federal courts to tailor relief necessary to remedy a plaintiff's injuries.

*Second*, the District Court correctly found that these preliminary injunctions are no broader than necessary to provide complete and tailored relief to Plaintiffs based on the unrebutted record of their injuries. *CASA* did not disturb black-letter law holding that injunctive relief may be as broad as "necessary to provide complete relief to each plaintiff with standing to sue," *id.* at *15, which is exactly the standard the District Court applied when granting preliminary relief.

*Third*, the preliminary injunctions are predicated on Plaintiffs' likelihood of success on the merits of their Administrative Procedure Act ("APA") claims. *CASA*'s holding was limited to the scope of remedial

authority under the Judiciary Act; it did not limit the availability of broad relief under the APA, including at the preliminary stage of a case. *See id.* at *8 n.10.

*Fourth*, Plaintiffs—who include refugees and their family members—filed this putative class action on behalf of *all* refugees and their family members who are impacted by Defendants' unlawful, indefinite suspension of the U.S. Refugee Admissions Program ("USRAP") and domestic resettlement support. *CASA* expressly distinguished between impermissible universal injunctions and relief in class actions, *see id.* at *9-10 & *12 n.15, and the Supreme Court recently reaffirmed that nationwide preliminary relief for a putative class is permissible where necessary to ensure classwide relief remains available at final judgment, *see AARP v. Trump*, 145 S.Ct. 1364, 1369 (2025) (per curiam).

In sum, *CASA* and other recent jurisprudential developments support the propriety of the District Court's preliminary injunctions, and they should be affirmed for the reasons discussed in Plaintiffs' answering brief. *See* No. 25-1313, Dkt. 70.1.

**ARGUMENT**

## I. *CASA* did not hold that nationwide injunctions are unconstitutional.

*CASA* expressly declined the government's invitation to hold that nationwide or universal injunctions exceed federal courts' constitutional authority, *see* 2025 WL 1773631, at *6 n.4—an argument Defendants also advanced in this case, *see, e.g.*, No. 25-1313, Dkt. 47.1 at 52 ("Nationwide or universal remedies exceed the power of Article III courts[.]" (citation modified)). Instead, *CASA*'s holding was far narrower: universal injunctions that award relief to nonparties exceed the equitable authority Congress granted to federal courts under the Judiciary Act because there was no "sufficiently analogous" relief available from the High Court of Chancery in England at the time of the founding or the Judiciary Act's enactment. 2025 WL 1773631, at *6.

## II. *CASA* confirmed that broad injunctions are permissible when necessary to provide complete relief—the same standard applied by the District Court.

*CASA* is significant both for what it did hold and for what it did not. It did *not* conclude that federal courts lack equitable authority under the Judiciary Act to issue universal injunctions in all cases. Instead, the critical issue is *to whom* a court awards relief. *CASA* reaffirmed the "complete-relief principle," which "has deep roots in equity" and allows federal courts to

3

"administer complete relief between the parties" in a lawsuit. 2025 WL 1773631, at *10-11 (emphasis omitted) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928)). Though federal courts lack authority under the Judiciary Act to "award [] relief to *non*parties," *CASA* made clear that an injunction is permissible even if it has "the *practical effect* of benefiting nonparties" so long as that benefit is "merely incidental" to the award of complete relief to the parties. *Id.* at *10-11 (first emphasis added) (quoting *Trump v. Hawai'i*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring)).

Here, the District Court expressly recognized and properly applied these guiding principles, determining that nothing short of broad injunctions would provide complete and tailored relief *to Plaintiffs* and stop the irreparable and existential harms imposed by Defendants—even though nonparties incidentally benefit as well. As *CASA* recognized, there are some "injuries for which it is all but impossible for courts to craft relief that is complete *and* benefits only the named parties." *Id.* at *11 & n.12. *CASA* identified two such injuries: a racially gerrymandered congressional map challenged by individual voters, *see id.* at *11 n.12 (citing *Shaw v. Hunt*, 517 U.S. 899 (1996)), and "a nuisance in which one neighbor sues another for blasting loud music at all hours of the night," *id.* at *11. In the former case,

relief might take the form of a redrawn congressional map that inevitably benefits nonparty voters; in the latter case, "order[ing] the defendant to turn her music down . . . . will necessarily benefit the defendant's surrounding neighbors too." *Id.* In either case, "there is no way to peel off just the portion of the [unlawful act] that harmed the plaintiff." *Id.* (citation modified).

In other words, the impermissibility of certain universal injunctions lies not with their incidental effect on nonparties but in the failure to tailor relief to what is necessary and appropriate to remedy a plaintiff's injury. *CASA* explained that, where expanding the scope of an injunction "would not render [a plaintiff's] relief any more complete," such expansion is impermissible because a more limited injunction would already vindicate the complete-relief principle. *Id.* As relevant in *CASA*, an individual parent challenging the birthright-citizenship executive order receives complete relief when the order is enjoined as to her child alone; "[e]xtending the injunction to cover all other similarly situated individuals would not render *her* relief any more complete." *Id.*

Notably—and relevant to the District Court's orders on appeal—*CASA* did not strike down the nationwide injunction granted to the plaintiff *States* as an impermissible exercise of equitable authority. *See id.* at *11-12. A district court had concluded that "a universal injunction was necessary to

provide the States *themselves* with complete relief" based on their "financial injuries and the administrative burdens flowing from citizen-dependent benefits programs." *Id.* at *12. "Given the cross-border flow," the States explained, "a patchwork injunction would prove unworkable, because it would require them to track and verify the immigration status of the parents of every child, along with the birth State of every child for whom they provide certain federally funded benefits." *Id.* Rather than vacate the injunction's nationwide scope, *CASA* instead directed the district court to consider on remand "whether a narrower injunction is appropriate," *id.*—implicitly recognizing that the complete-relief principle might require broad, nationwide relief given the specific facts and nuances at issue.

Such is the case here. The District Court determined, based on the record before it and the *unrebutted* injuries demonstrated by Plaintiffs, that the broad scope of its preliminary injunctions was "necessary to provide complete relief" to Plaintiffs and stop the irreparable, compounding, and existential harms they face. 1-ER-29-30, 35, 91-92, 94, 97 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Specifically, the organizational Plaintiffs provide resettlement services in at least thirty states (and in every appellate circuit, *see* 4-ER-776), having invested decades building the local partnerships, skills, and infrastructure

6

necessary to provide resettlement support to refugees and the nation's Afghan and Iraqi allies, *see* 5-ER-1009 (Plaintiff Church World Service, Inc. ("CWS") operates in twenty-four states); 5-ER-1025-26, 1029 (Plaintiff HIAS, Inc. ("HIAS") operates in thirty states); 5-ER-1043-45 (Plaintiff Lutheran Community Services Northwest operates in three states and "refugee resettlement work is a deeply local endeavor that depends on [its] long-term partnerships in the communities [it] serve[s]"). The federal funding they receive for this work is allotted "per refugee" assigned to their local affiliates, 2-ER-221-22, 237, 239-40, such that every fewer refugee served by their programming constitutes an injury to Plaintiffs, *see* 1-ER-55. Defendants' challenged actions—indefinitely suspending all refugee processing abroad (work done by nonparties in most regions) and terminating all refugee-related funding—prevents *all* refugees from receiving the organizational Plaintiffs' domestic services, cutting off federal funding and creating an existential threat to their continued operations. 1-ER-29-30, 91-92, 94.

Meanwhile, Plaintiffs HIAS and CWS have for decades received federal funding to process refugee cases abroad. But they cannot process those cases (and thus remain in operation) because refugees cannot be admitted to the United States without an "assurance" of support from a domestic

resettlement agency, 1-ER-20—and *all* resettlement agencies have had their funding terminated. Tailoring relief to remedy this injury necessarily (though incidentally) benefits nonparty resettlement agencies. By law, refugee placement in the United States must take into account refugees' preexisting family ties to particular locations, the availability of employment and affordable housing in local areas, and other factors. *See* 8 U.S.C. § 1522(a)(2)(C)(iii). As a result, refugee assurances extend beyond the states where the organizational Plaintiffs operate, and thus complete relief cannot be limited to only those states (or only those organizations). Most resettlement agencies are nonparties; it would therefore be "impossible" for the District Court to craft relief—which *must* be geographically broad— without benefiting nonparties. *CASA*, 2025 WL 1773631, at *11 n.12.

Likewise, complete relief for the individual Plaintiffs also necessarily benefits (again, incidentally) nonparties. The individual Plaintiffs are dispersed across different regions of the world, *see* 4-ER-941, 949, 956; 5-ER-965, 972, 980-82, 995, 1001, and the Resettlement Support Centers that process cases in those regions are nearly all operated by nonparties, *see* SER-215. Further, the individual Plaintiffs intend to or already have resettled in different U.S. states, including areas where the organizational Plaintiffs do not operate. *See, e.g.*, 2-ER-129 (Plaintiff Ali was assured by and slated to

8

receive resettlement support from nonparty Catholic Charities). Consequently, the individual Plaintiffs cannot have their refugee cases processed and receive their statutorily mandated resettlement benefits without the participation of nonparty entities processing refugee cases and providing resettlement support. And, as discussed below, putative class members cannot have their cases processed and receive resettlement benefits without nonparties.

The District Court recognized that the USRAP "functions as an integrated whole, with interconnected processes spanning international borders and domestic agencies." 1-ER-98. Plaintiffs' injuries make it all but impossible to "craft relief that is complete *and* benefits only the named plaintiffs," *CASA*, 2025 WL 1773631, at *11 n.12; a more limited "patchwork injunction" would be legally insufficient and practically unworkable. The unrebutted record demonstrates existential threats and injuries imposed on Plaintiffs by Defendants' unlawful actions, and tailored relief to remedy these harms requires nothing less than a broad, nationwide scope. *See* 1-ER-29-30, 34-35, 91-93, 97-98.[1]

---

[1] In their reply brief, Defendants impermissibly proposed for the first time how the preliminary injunctions might have been narrowed. *See* No. 25-1313, Dkt. 97.1 at 33-34. Those arguments were not made before the District Court or in Defendants' opening brief on appeal, and they have been forfeited. *See Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025).

### III. *CASA* did not bar broad relief in APA cases, including at the preliminary stage.

*CASA*'s holding was limited to federal courts' "equitable authority under the Judiciary Act"; as that case did not involve APA claims, the Supreme Court did not address "whether the [APA] authorizes federal courts to vacate federal agency action." 2025 WL 1773631, at *8 & n.10. Accordingly, *CASA* did not disturb well-settled precedent—including a line of cases from this Court—providing that the standard remedy under the APA is vacatur of unlawful agency action *in its entirety*. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021) ("A successful APA claim by a single individual can affect an 'entire' regulatory program." (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990))); *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020) ("[V]acatur of an agency rule prevents its application to all those who would otherwise be subject to its operation.").

Indeed, the APA specifically directs that a "reviewing court shall . . . hold unlawful and set aside agency action" that is arbitrary and capricious, in excess of authority, or otherwise unlawful. 5 U.S.C. § 706(2). And Congress expressly authorized federal courts to use their broad remedial authority pending judicial review "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Id.* § 705. Federal

courts thus "may issue all necessary and appropriate process . . . to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." *Id.*; *see also CASA*, 2025 WL 1773631, at *19 (Kavanaugh, J., concurring) ("[I]n cases under the [APA], plaintiffs may ask a court to preliminarily 'set aside' a new agency rule." (quoting 5 U.S.C. § 706(2)); *E. Bay Sanctuary Covenant v. Trump*, 354 F.Supp.3d 1094, 1119 n.20 (N.D. Cal. 2018) (discussing availability of broad preliminary relief in APA cases), *aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021); *Gomez v. Trump*, 485 F.Supp.3d 145, 202-03 (D.D.C. 2020) (collecting cases).

In this appeal, the District Court's second injunction—enjoining the agency Defendants' termination of all refugee-related funding—is entirely predicated on Plaintiffs' likelihood of success on the merits of their APA claims. *See* 1-ER-18-28. The first injunction, in turn, is predicated in large part on Plaintiffs' APA claims insofar as the agency Defendants substantially expanded the scope of the Refugee Executive Order by implementing it before its effective date, indefinitely suspending all refugee processing, and suspending all refugee-related funding. *See* 1-ER-69-89. *CASA* did not undermine the District Court's decision to broadly enjoin the unlawful agency action challenged here, which is consistent with this Court's

longstanding holding that vacatur of agency action in its entirety is appropriate in APA cases, including as preliminary relief.

## IV. *CASA* did not bar broad classwide relief, even where it precedes class certification.

Finally, the preliminary injunctions considered in *CASA* were not issued on behalf of certified or putative classes, and the Supreme Court emphasized that its holding on universal injunctions had no bearing on the scope of remedial relief available in class actions. *See* 2025 WL 1773631, at *9-10 & *12 n.15 (distinguishing class actions). Indeed, the Supreme Court reaffirmed earlier this term that federal courts have authority to grant temporary relief on a classwide basis to putative classes *even prior to class certification. See AARP*, 145 S.Ct. at 1369 (citing 2 W. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:30 (6th ed. 2022 & supp. 2024)); *see also, e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1069 & n.4 (9th Cir. 2020) (affirming nationwide injunction on behalf of putative class); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) (same).

Plaintiffs filed this case on behalf of all refugees being processed for admission to the United States, family members in the United States seeking to reunite with refugees, and all resettled refugees and Afghans and Iraqi allies who qualify for reception and placement resettlement services. *See* 4-ER-784-832; 5-ER-1051-96. Plaintiffs moved for class certification just

weeks after filing the case and briefed that motion simultaneously with their second preliminary-injunction motion. *See* ASER-48-68.[2] And *CASA* did not disturb the District Court's authority to grant nationwide relief to a putative nationwide class.[3]

## CONCLUSION

*CASA* ultimately supports the District Court's conclusion that broad preliminary relief is permissible and appropriate in this case. Given the USRAP's unique dynamics and the specific and unrebutted injuries suffered by the individual and organizational Plaintiffs, the complete-relief principle (which *CASA* clearly endorsed) requires nothing short of injunctions with broad, nationwide scopes. And because the preliminary injunctions are predicated on Plaintiffs' likelihood of success on their APA claims, and Plaintiffs seek relief on behalf of a putative class of all refugees being processed for admission and all refugees and Afghan and Iraqi allies in the United States who qualify for initial resettlement support, broad preliminary relief is further permissible and appropriate under binding precedent. *CASA*

---

[2] "ASER-" cites refer to Plaintiffs' additional supplemental excerpts of record, filed concurrently with this brief.

[3] Plaintiffs' class-certification motion remains pending, and Defendants have urged the District Court not to resolve class certification prior to this Court's decision on appeal. *See* ASER-14-16.

does not change that analysis. This Court should therefore affirm the District Court's preliminary injunctions in their entirety.

Respectfully submitted this 17th day of July, 2025.

INTERNATIONAL REFUGEE
ASSISTANCE PROJECT

Linda Evarts
Deepa Alagesan
Mevlüde Akay Alp
Pedro Sepulveda, Jr.
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 939-9169
levarts@refugeerights.org
dalagesan@refugeerights.org
makayalp@refugeerights.org
psepulveda@refugeerights.org

Melissa S. Keaney
P.O. Box 2291
Fair Oaks, California 95628
(646) 939-9169
mkeaney@refugeerights.org

Megan M. Hauptman
Laurie Ball Cooper
650 Massachusetts Avenue NW,
Suite 600
Washington, D.C. 20001
(516) 732-7116
mhauptman@refugeerights.org
lballcooper@refugeerights.org

PERKINS COIE LLP

By: *s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr.
Jonathan P. Hawley
Shireen Lankarani
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
(206) 359-8000
HSchneider@perkinscoie.com
JHawley@perkinscoie.com
SLankarani@perkinscoie.com

John M. Devaney
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005
(202) 654-6200
JDevaney@perkinscoie.com

Joel W. Nomkin
2525 East Camelback Road, Suite 500
Phoenix, Arizona 85016
(602) 351-8000
JNomkin@perkinscoie.com

Nicholas J. Surprise
33 East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460
NSurprise@perkinscoie.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the attached document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 17, 2025.

*s/ Harry H. Schneider, Jr.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-1313, 25-1939

I am the attorney or self-represented party.

**This brief contains** | 2,739 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

◻ it is a joint brief submitted by separately represented parties.
◻ a party or parties are filing a single brief in response to multiple briefs.
◻ a party or parties are filing a single brief in response to a longer joint brief.

⬤ complies with the length limit designated by court order dated July 3, 2025.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Harry H. Schneider, Jr. | **Date** | July 17, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*