**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PACITO; et al., *Plaintiffs - Appellees*, v. DONALD J. TRUMP, in his official capacity as President of the United States; et al., *Defendants - Appellants*. | No. 25-1313 D.C. No. 2:25-cv-00255-JNW Western District of Washington, Seattle ORDER |
| PACITO; et al., *Plaintiffs - Appellees*, v. DONALD J. TRUMP, in his official capacity as President of the United States; et al., *Defendants - Appellants*. | No. 25-1939 D.C. No. 2:25-cv-00255-JNW Western District of Washington, Seattle |

Filed September 12, 2025

Before:  CLIFTON, BYBEE, and LEE, Circuit Judges.

Order by Judge Bybee;
Partial Concurrence and Partial Dissent by Judge LEE.

Order

### SUMMARY[*]

### Immigration

In the government's appeal of the district court's preliminary injunctions prohibiting enforcement of Executive Order No. 14163, "Realigning the United States Refugee Admissions Program," 90 Fed. Reg. 8459 (Jan. 30, 2025), the panel stayed the district court orders pending appeal, except as specified in this Order, with an opinion to issue in due course.

The panel concluded that the government is likely to prevail on plaintiffs' challenge to the validity of Executive Order No. 14163's suspension of refugee admissions, explaining that the court cannot engage in a searching inquiry into the persuasiveness of the President's justifications. The panel also determined that the remaining factors—irreparable harm to the applicant, substantial injury

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

to other interested parties, and the public interest—favored the United States.

However, the panel concluded that the government is not likely to prevail on at least one of plaintiffs' challenges. Under 8 U.S.C. § 1522, the government must provide certain reception and placement services to refugees after their admission into the United States. In light of the government's uncertainty regarding its ability to provide these statutorily-mandated services, the panel directed the government to reinstate the cooperative agreements necessary to provide such services.

The panel also vacated its prior stay orders and denied as moot the government's emergency motion to enforce, clarify, or amend this court's prior stay order.

Concurring in part and dissenting in part, Judge Lee would stay the district court's injunctions in their entirety. Judge Lee agreed that the President has the authority to impose a moratorium on refugee admissions, but disagreed that the federal government has a legal duty, under 8 U.S.C. § 1522, to provide services to those who were recently admitted before the suspension went into effect. In Judge Lee's view, Section 1522 is most naturally read as an authorization—not a mandate.

## COUNSEL

Linda B. Evarts, Mevlüde A. Alp, Pedro Sepulveda Jr., and Deepa Alagesan, International Refugee Assistance Project, New York, Nesw York; Melissa S. Keaney, International Refugee Assistance Project, Fair Oaks, California; Laurie B. Cooper, International Refugee Assistance Project, Washington, D.C.; Megan M. Hauptman and Laurie B. Cooper, International Refugee Assistance Project, Washington, D.C.; Harry H. Schneider Jr., Jonathan P. Hawley, and Shireen Lankarani, Perkins Coie LLP, Seattle, Washington; Joel W. Nomkin, Perkins Coie LLP, Phoenix, Arizona; John M. Devaney, Perkins Coie LLP, Washington, D.C.; Nicholas J. Surprise, Perkins Coie LLP, Madison, Wisconsin; for Plaintiffs-Appellees.

Tiberius T. Davis, August E. Flentje, Joseph McCarter, Lindsay W. Zimliki, Jason K. Zubata, and Alexandra Yeatts, Trial Attorneys; Office of Immigration Litigation, Civil Division; David Kim, Senior Litigation Counsel; Drew C. Ensign, Deputy Assistant Attorney General; Yaakov M. Roth, Principal Deputy Assistant Attorney General; Brett A. Shumate, Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Defendant-Appellants.

Elizabeth B. Wydra, Brianne J. Gorod, Miriam Becker-Cohen, and Nina G. Henry, Constitutional Accountability Center, Washington, D.C., for Amicus Curiae Constitutional Accountability Center.

Andrew L. Schlafly, Far Hills, New Jersey, for Amici Curiae Immigration Reform Law Institute.

Fawn J. Rajbhandari-Korr, Lindsay Nako, and Lori Rifkin, Impact Fund, Berkeley, California, for Amici Curiae The

Impact Fund, Justice in Aging, Refugee and Immigrant Center for Education, Centro Legal de la Raza, Contra Costa Senior Legal Services, Diverse Elders Coalition, La Raza Centro Legal, Oasis Legal Services, Self-Help for the Elderly, and Southeast Asia Resource Action Center.

Hannah C. Vail and Brett M. Gannon, Assistant Attorneys General; Elizabeth D. Matos, Chief, Civil Rights Division; Tasha J. Bahal, Deputy Solicitor General; Andrea J. Campbell, Commonwealth of Massachusetts Attorney General; Office of the Commonwealth of Massachusetts Attorney General, Boston, Massachusetts; Emma Grunberg, Kelly A. Paradis, and Cristina Sepe, Deputy Solicitors General; Nicholas W. Brown, Washington Attorney General; Office of the Washington Attorney General, Olympia, Washington; Kristin K. Mayes, Arizona Attorney General, Office of the Arizona Attorney General, Phoenix, Arizona; Rob Bonta, California Attorney General, Office of the California Attorney General, Sacramento, California; Philip J. Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Kathleen Jennings, Delaware Attorney General, Office of the Delaware Attorney General, Wilmington, Delaware; Anne E. Lopez, Hawaiʻi Attorney General, Office of the Hawaiʻi Attorney General, Honolulu, Hawaiʻi; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Dana Nessel, Michigan Attorney General, Office of the Michigan Attorney General, Lansing,

Michigan; Keith Ellison, Minnesota Attorney General, Office of the Minnesota Attorney General, St. Paul, Minnesota; Aaron D. Ford, Nevada Attorney General, Office of the Nevada Attorney General, Carson City, Nevada; Matthew J. Platkin, New Jersey Attorney General, Office of the New Jersey Attorney General, Trenton, New Jersey; Letitia James, New York Attorney General, Office of the New York Attorney General, New York, New York; Dan Rayfield, Oregon Attorney General, Office of the Oregon Attorney General, Salem, Oregon; Peter F. Neronha, Rhode Island Attorney General, Office of the Rhode Island Attorney General, Providence, Rhode Island; Joshua L. Kaul, Wisconsin Attorney General, Office of the Wisconsin Attorney General, Madison, Wisconsin; for Amici Curiae The State of Washington, Commonwealth of Massachusetts, and States of Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Rhode Island, Vermont, and Wisconsin.

Matthew Z. Crotty, Riverside NW Law Group PLLC, Spokane, Washington, for Amici Curiae Refugees International.

Clara J. Shin, Covington & Burling LLP, San Francisco, California; Michael E. Cunniff and Aparna Sundaram, Covington & Burling LLP, New York, New York; Alexis N. Dyschkant and Evan K.W. Matsuda, Covington & Burling LLP, Washington, D.C.; for Amici Curiae Former U.S. Government Officials.

Linda Dakin-Grimm, Milbank LLP, Los Angeles, California; Atara Miller, Victor Hollenberg, and Alex Ruppert, Milbank LLP, New York, New York; for Amici

Curiae Bet Tzedek Legal Services and Faith-Based Organizations.

Gregory L. Diskant, Jonah Wacholder, Ian D. Eppler, and Colleen Anderson, Patterson Belknap Webb & Tyler LLP, New York, New York, for Amici Curiae Ethiopian Community Development Council and Lutheran Services Carolinas.

Sarah M. Rich and Somil B. Trivedi, Democracy Forward Foundation, Washington, D.C.; Sunil R. Varghese, Refugee Council USA, Washington, D.C.; for Amicus Curiae Refugee Council USA.

**ORDER**

BYBEE, Circuit Judge:

We heard oral argument in this case on an expedited basis on September 3, 2025. An opinion will issue in due course. In the interim, this Order shall constitute a stay pending appeal and further order of this court. We hereby vacate our administrative stay issued July 18, 2025. We vacate our prior stay issued March 25, 2025, as amended on April 21 and May 9, 2025. The district court's February 28, 2025 (Dist. Ct. Dkt. 45) and March 24, 2025 (Dist. Ct. Dkt. 79) preliminary injunctions are stayed in their entirety except as specified in this Order. The government's emergency motion of July 17, 2025 (Dkt. 108) is denied as moot.

BACKGROUND

On January 20, 2025, President Trump issued an executive order entitled "Realigning the United States Refugee Admissions Program." Exec. Order No. 14163, 90 Fed. Reg. 8459 (Jan. 30, 2025). Pursuant to 8 U.S.C. §§ 1182(f) and 1185(a), the President determined that "entry into the United States of refugees under the [U.S. Refugee Admissions Program (USRAP)] would be detrimental to the interests of the United States" and directed that "entry into the United States of refugees under the USRAP be suspended" pending further findings. Exec. Order. No. 14163, § 3(a). *See* 8 U.S.C. § 1182(f) (providing in relevant part that "[w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interest of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be

appropriate"). On January 24, 2025, the Department of State suspended all funding of the USRAP program, purportedly pursuant to a different executive order entitled "Reevaluating and Realigning United States Foreign Aid." Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025). Pending further review, this suspension included funding for domestic resettlement services for refugees admitted to the United States.

The plaintiffs are refugees who were previously admitted to the United States or who have been approved for resettlement to the United States but remain outside the country and three organizations that had cooperative agreements with the State Department to provide overseas processing for persons applying for refugee status and resettlement services for refugees admitted to the United States. In February 2025, the plaintiffs filed suit in the Western District of Washington, alleging that Executive Order 14163's suspension of the refugee program violated the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 (codified in various provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*), and that the defunding of USRAP violated various provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq. See Negusie v. Holder*, 555 U.S. 511, 520 (2009) (describing the Refugee Act as "a general rule for the ongoing treatment of all refugees and displaced persons"). On February 25, the district court orally issued a preliminary injunction prohibiting the enforcement or implementation of §§ 3(a), (b), (c), and 4 of Executive Order No. 14163. On February 26, the government terminated every cooperative agreement to provide reception and placement services for refugees in the United States and all but one of the cooperative agreements to provide USRAP processing support abroad.

On February 28, the district court issued a written order to define the scope of the February 25 preliminary injunction, specifying that it also prohibits the suspension of USRAP funding. On March 24, the district court issued a second preliminary injunction ordering the State Department to reinstate all cooperative agreements terminated after the February 25 ruling. The government filed notices of appeal on February 28 and March 25, 2025.

The government sought a stay pending appeal of the February 28 district court order, which a motions panel of this court granted in part on March 25. Quoting *Trump v. Hawaii*, we observed that the authority under which the President issued Executive Order No. 14163, 8 U.S.C. § 1182(f), "'exudes deference' to the President and 'vests [him] with ample power to impose entry restrictions in addition to those elsewhere enumerated in the [Immigration and Nationality Act].'" Order of March 25, 2025, at 2 (quoting 585 U.S. 667, 684 (2018)). We denied the motion for a stay, however, "to the extent the district court's preliminary injunction order applies to individuals who were conditionally approved for refugee status by the United States Citizenship and Immigration Services before January 20, 2025." *Id.* at 1. We issued two additional orders clarifying this "limited carveout from the stay." Order of May 9, 2025, at 1; Order of April 21, 2025. The motions panel directed full briefing and ordered the Clerk of Court to place the appeal on the next available calendar.

Following briefing but before argument scheduled for September 19, 2025, the district court, on July 14, issued an order to establish a framework for enforcing the limited carveout and appointing a magistrate judge to oversee the framework. On July 17, the government filed an emergency motion to enforce, clarify or amend the stay order, which the

plaintiffs opposed. On July 18, 2025, we issued an administrative stay of the district court's July 14 enforcement order. We scheduled oral argument on an expedited basis.

## DISCUSSION

In light of the briefing by the parties and oral argument, the case is submitted for decision. An opinion on the merits will issue in due course. In the interim, we now vacate our administrative stay of July 18 and our stay of March 25, as amended on April 21 and May 9. We issue this stay pending final resolution of this appeal. The district court's orders of February 28 and March 24, 2025 are stayed in their entirety, except as noted below.

> The standards for issuing a stay are well established. We consider four factors:
>
>> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). Of these factors, the first two—the showing of success on the merits and irreparable injury—are "the most critical." *Id.* The government is likely to prevail on plaintiffs' challenge to the validity of Executive Order No. 14163's suspension of refugee admissions, and we cannot engage in "a searching inquiry into the persuasiveness of the President's

justifications." *Hawaii*, 585 U.S. at 686. "The sole prerequisite set forth in § 1182(f) is that the President 'find[]' that the entry of the covered aliens 'would be detrimental to the interests of the United States.' The President has undoubtedly fulfilled that requirement here." *Id.* at 685. "[T]he language of § 1182(f) is clear, and the [Executive Order] does not exceed any textual limit on the President's authority," *id.* at 688, to suspend the "entry of . . . any class of aliens into the United States," 8 U.S.C. § 1182(f). The remaining factors, touching upon both domestic and foreign interests of the United States, as determined by the "broad discretion" conferred on the President, *Hawaii*, 585 U.S. at 683–84, favor the United States as well.

For reasons to be explained in full in an opinion to follow, however, the government is not likely to prevail on at least one of plaintiffs' challenges under the APA. Under 8 U.S.C. § 1522, the government must provide certain reception and placement services to refugees after their admission into the United States. Section 1522(a)(1)(A) requires the Director of the Office of Refugee Resettlement—an office within the Department of Health and Human Services—"to the extent of available appropriations"—to:

> (i) make available sufficient resources for employment training and placement in order to achieve economic self-sufficiency among refugees as quickly as possible, (ii) provide refugees with the opportunity to acquire sufficient English language training to enable them to become effectively resettled as quickly as possible, (iii) insure that cash assistance is made available to refugees in

> such a manner as not to discourage their economic self-sufficiency, in accordance with subsection (e)(2), and (iv) insure that women have the same opportunities as men to participate in training and instruction.

*See also* 45 C.F.R. §§ 400.200 *et seq.* (describing the federal funding available for refugee services). Similarly, with respect to unaccompanied minor refugees, § 1522(d)(2)(B) provides: "During any interim period while such a child is in the United States or in transit to the United States but before the child is so placed, the Director shall assume legal responsibility (*including financial responsibility*) for the child, if necessary, and is authorized to make necessary decisions to provide for the child's immediate care" (emphasis added). With respect to cash and medical assistance for recently resettled refugees, § 1522(e)(7)(A) provides that the Secretary of Health and Human Services "shall develop and implement alternative projects for refugees who have been in the United States less than thirty-six months, under which refugees are provided interim support, medical services, support services, and case management, as needed." We note that for FY 2025, Congress has appropriated $3.178 billion for migration and refugee assistance, *see* Pub. L. No. 119-4 § 1101(a)(11) (adopting funding appropriated in division F of Pub. L. No. 118-147), which was reduced by $800 million in the Rescissions Act of 2025, Pub. L. No. 119-28, § 2(b)(6). Section 1523 requires accountability from the Secretary in the form of a detailed report "on activities under this subchapter to the Committees on the Judiciary of the House

of Representatives and of the Senate not later than January 31 following the end of each fiscal year."

By statute, these resettlement services—often referred to as "reception and placement" services—may be provided through the use of contracts, grants, or cooperative agreements with "public or private nonprofit agencies." 8 U.S.C. § 1522(b)(1)(A)(ii). The United States has historically entered into cooperative agreements with various resettlement organizations to provide such services. The organizational plaintiffs are three such organizations with which the Department of State has had cooperative agreements.

As we observed above, in February 2025, the State Department terminated all cooperative agreements to provide such services. Acknowledging such termination of funding for resettlement services, the government advised the district court on March 10, 2025, that it was "actively preparing a request for proposals for a new resettlement agency that could provide reception and placement services." Dist. Ct. Dkt. 62, at 5. Despite that representation, the government advised the panel at oral argument that it was unaware whether any progress had been made toward securing a new agency or agencies that could provide reception and placement services.

In light of the government's uncertainty regarding its ability to provide the reception and placement services statutorily mandated under 8 U.S.C. § 1522, the government is hereby directed to reinstate such cooperative agreements necessary to provide the reception and placement services described in § 1522 to refugees who have been admitted to the United States. Such services shall include the usual and

customary services that have been afforded such refugees under the prior cooperative agreements.

---

LEE, Circuit Judge, concurring-in-part and dissenting-in-part.

Even though the President enjoys vast discretion and deference in immigration matters, the district court incorrectly enjoined the executive branch from implementing the President's policy decision to limit admitting refugees and providing services for them. I would thus stay the district court's injunctions in their entirety.

My colleagues and I agree that the President has the authority to impose a moratorium on refugee admissions and would thus stay the district court's injunction on that issue. But we depart on whether the federal government has a legal duty to provide services to those who were recently admitted before the suspension went into effect. My colleagues interpret 8 U.S.C. § 1522 as requiring the government to provide certain services to refugees. To my eye, the provision is most naturally read as an authorization—not a mandate.

We start at the beginning: Section 1522's title is "*Authorization* for programs for domestic resettlement of and assistance to refugees." (emphasis added). Authorization is permissive, not mandatory. AUTHORIZATION, Black's Law Dictionary (12th ed. 2024) (defining it as "permission to do something" or the "official document granting such permission"). Congress thus allows action in §1522; it does not require it.

Further, the four specific statutory provisions that provide funding for different refugee services—*e.g.*,

"Program of initial resettlement," "Cash assistance and medical assistance to refugees"—all state that the "Director is *authorized*" to provide assistance. 8 U.S.C. §1522(b)-(e) (emphasis added). Again, these are statutory signals that the executive branch has discretion over funding.

In arguing that Section 1522 imposes mandatory funding, my colleagues look to §1522(a)—titled "Conditions and consideration"—which uses the word "shall" and the phrase "to the extent of available appropriations." But that language is qualified by the immediately preceding phrase: "In providing assistance under this section [*i.e.*, the discretionary funding provisions under §1522(b)-(e)]. . . " In other words, §1522(a) imposes certain mandatory "conditions and considerations" *if* the government chooses to fund refugee programs. For example, the Director "shall. . . make available sufficient resources for employment training and placement [under the § 1522(c)'s discretionary funding for "Project grants and contracts for services for refugee"] in order to achieve economic self-sufficiency among refugees as quickly as possible [*i.e.*, this is the mandatory condition or consideration that must be taken into account if the government decides to fund it]."

To bolster their claim of mandatory spending, my colleagues cite subsections (d)(2)(B) and (e)(7)(A) which arguably impose some obligations on the Director. Neither, however, persuasively counters the overall operation of § 1522. Subsection (d)(2)(B) requires that the program's Director take legal and financial responsibility for unaccompanied refugee children only if such responsibility is "necessary." The section also authorizes the Director "to make necessary decisions to provide for the child's immediate care." Even while using the word "shall," the

subsection drips with deference to the executive branch and invokes no firm mandate. It also is not clear from the record if there are any unaccompanied refugee children at issue here. Similarly, subsection (e)(7)(A) states the "Secretary shall develop and implement" projects for cash and medical support for refugees "as needed." The metes and bounds of the programs are up to executive discretion—hardly a congressional mandate.

In my view, Section 1522 authorizes the executive branch to craft programs under its discretion so long as appropriations flow. It does not require that those programs operate. As the law does not demand the executive branch provide these services, our court is in no position to mandate them. I thus respectfully dissent in part.